COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


PATRICK RAYMOND LONG
                                        OPINION BY
v.          Record No. 1824-95-4   JUDGE ROSEMARIE ANNUNZIATA
                                      NOVEMBER 26, 1996
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      Alfred D. Swersky, Judge

          Alejandra Rueda, Assistant Public Defender,
          for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Following a jury trial, appellant, Patrick Raymond Long, was

convicted of driving after having been adjudicated an habitual

offender and after having been previously convicted of the same

offense.  Appellant contends that the trial court erred in

refusing to allow him to present a necessity defense and that the

initial habitual offender order cannot serve as the basis for his

conviction.  We disagree and affirm.

                                I.

     At approximately 10:15 a.m. on November 18, 1994, Officer

Sherrie Bishop of the Alexandria Police Department stopped a

vehicle which appellant was driving and in which appellant's

sister, Mary Jacobs, was a passenger.  The propriety of the stop

is not at issue.  Appellant was unable to produce a driver's

license in response to Bishop's request, but he identified

himself as Jack Keville and provided a date of birth and social

security number.  Bishop ran a check on the information appellant provided and determined appellant was not Jack Keville.  Bishop asked appellant to exit the vehicle and take a seat in her cruiser.  Appellant eventually provided Bishop with his true name and social security number.  Upon running a check based on that information, Bishop determined that appellant had been adjudicated an habitual offender.  Bishop arrested appellant, and appellant was later indicted for driving after having been adjudicated an habitual offender, having been previously convicted of a like offense in violation of Code § 46.2-357, which, for all purposes relevant to this appeal, read the same in 1994 as it does today.[1]

---

[1]Code § 46.2-357 provides, in part:

> A.  It shall be unlawful for any person to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect.  However, the revocation determination shall not prohibit the person from operating any farm tractor on the highways when it is necessary to move the tractor from one tract of land used for agricultural purposes to another tract of land used for agricultural purposes, provided that the distance between the said tracts of land is no more than five miles.
>
> B.  Any person found to be an habitual offender under this article, who is thereafter convicted of driving a motor vehicle . . . in the Commonwealth while the revocation determination is in effect, shall be punished as follows:
>
> *     *     *     *     *     *     *
>
> [2,3] [In cases of second or subsequent

Appellant sought to establish the defense of necessity.  The Commonwealth filed a motion in limine seeking to preclude appellant from offering evidence related to the defense.  The trial court ruled that because the statute addressed necessity in the context of mitigation of punishment, the legislature intended to preclude the defense of necessity on the merits.  On that ground, the court refused to admit evidence relating to the defense.  However, the court nonetheless permitted appellant to relate the facts and circumstances of the offense during the guilt phase of the trial.  The court also allowed appellant to elicit limited testimony from three witnesses to corroborate his recitation of the events.

Appellant's motion to dismiss the indictment, in which he challenged the validity of the order declaring him an habitual offender, was denied.  The trial court found that the order was clear and unambiguous.  The order, entered February 20, 1986, states, in part, that:

> Patrick Rammond [sic] Long is hereby DECLARED
> to be a Habitual Offender and this [sic]
> his/her privilege to operate a motor vehicle

(..continued)

> offense] . . . such person shall be guilty of
> a felony punishable by confinement in a state
> correctional facility for not less than one
> year nor more than five years or . . . by
> confinement in jail for twelve months and no
> portion of such sentence shall be suspended
> except that . . . (ii) in cases wherein such
> operation is necessitated in situations of
> apparent extreme emergency which require such
> operation to save life or limb, said
> sentence, or any part thereof may be
> suspended.

in the Commonwealth of Virginia, BE and is
HEREBY REVOKED. . . .

Appellant also challenged the validity of the order in his motion to strike the Commonwealth's evidence, which the court denied.

Appellant testified that he knew he had been adjudicated an habitual offender. He testified that he disregarded that fact, drove the vehicle, and lied about his identity when stopped, because he believed his sister's health was endangered and she needed to get to the hospital.

## II.

The trial court ruled that the habitual offender statute abrogates the defense of necessity in such cases and refused to allow appellant to present a necessity defense. The propriety of this ruling is a question of law.[2]

The common law defense of necessity is premised on a resolution of conflicting public policy issues.

> [It] traditionally addresses the dilemma created when physical forces beyond the actor's control renders "illegal conduct the lesser of two evils." If one who is starving eats another's food to save his own life, the defense of necessity may bar a conviction for the larceny of the other's food. The essential elements of this defense include: (1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm.

[2]Because we find that the defense of necessity is unavailable, we need not decide whether the evidence was sufficient to support an instruction on that issue.

Buckley v. City of Falls Church, 7 Va. App. 32, 33, 371 S.E.2d

827, 827-28 (1988) (citations omitted).

> The rationale of the necessity defense is not
> that a person, when faced with the pressure
> of circumstances of nature, lacks the mental
> element which the crime in question requires.
> Rather, it is this reason of public policy:
> the law ought to promote the achievement of
> higher values at the expense of lesser
> values, and sometimes the greater good for
> society will be accomplished by violating the
> literal language of the criminal law.

1 W. LaFave & A. Scott, Substantive Criminal Law § 5.4(a), at 629

(1986).

> In some sense, the necessity defense allows
> us to act as individual legislatures,
> amending a particular criminal provision or
> crafting a one-time exception to it, subject
> to court review, when a real legislature
> would formally do the same under those
> circumstances.

United States v. Schoon, 971 F.2d 193, 196-97 (9th Cir. 1991),

cert. denied, 504 U.S. 940 (1992).

However, the legislature may abrogate the common law rule by

choosing to resolve the conflicting public policy matters by the

enactment of law. It follows, therefore, that

> [t]he defense of necessity is available only
> in situations wherein the legislature has not
> itself, in its criminal statute, made a
> determination of values. If it has done so,
> its decision governs.

1 LaFave & Scott, supra, at 629. In other words, where the

legislature has resolved the balance of the harms to be avoided,

an individual is preempted from relying on the defense of

necessity as a means of re-weighing those harms.

This legislative choice-of-values analysis, while specific to the defense of necessity, comports with general principles of Virginia law relating to the construction of statutes in derogation of the common law.

> The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended. When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.

Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988) (citations omitted). In light of these principles, where it is apparent that the legislature has made a value judgment with respect to certain behavior, it follows that the legislature intended to abrogate to that extent the common law defense of necessity, which, if not abrogated, would, within limits, allow individuals to make their own value judgments with respect to that behavior.

We find that the plain meaning of Code § 46.2-357 clearly "encompass[es] the entire subject covered by the common law" defense of necessity.[3] The legislature chose to relegate the

---

[3]Appellant argues that the language of the statute is even more encompassing than the common law defense of necessity. This, he argues further, is evidence that the legislature intended not to abrogate the common law defense. Appellant's argument is untenable. Assuming the statutory language is more encompassing than the common law, its breadth makes the legislature's intent to encompass the entire subject of the

factual circumstances which would give rise to the common law defense of necessity to the punishment phase of the habitual offender proceedings. This decision was, in effect, a determination of values--that there could be no guilt-nullifying justification for an habitual offender, twice convicted of driving after having been adjudicated an habitual offender, to drive. Accordingly, we find that the legislature intended to abrogate the common law defense of necessity as a justification for the commission of the criminal act by a twice-convicted offender. The trial court's refusal to permit evidence related to this defense was, therefore, not erroneous.

### III.

Appellant next contends that the initial order declaring him an habitual offender is invalid because it fails to incorporate key provisions of the habitual offender statute and because it is impermissibly vague. We find that the order was sufficient and provided appellant proper notice of the conduct he was prohibited from engaging in as a result of his status as an habitual offender.

The crime of driving after having been declared an habitual offender is defined in terms of the order declaring the accused an habitual offender. Davis v. Commonwealth, 12 Va. App. 246, 249, 402 S.E.2d 711, 712 (1991). In the present case, the order states that appellant's privilege to operate a motor vehicle is
(..continued)
common law even clearer.

revoked, and it sets no limit on the prohibition against driving. See Manning v. Commonwealth, 22 Va. App. 252, 255, 468 S.E.2d 705, 707 (1996) (en banc) ("[Manning] . . . is barred from operating a motor vehicle . . . and . . . no license to operate a motor vehicle in the state [shall be] issued to [Manning] for a period of ten years . . . or until the privilege . . . has been restored . . ."); cf. Davis, 12 Va. App. at 247, n.2, 402 S.E.2d at 712, n.2 ("[Davis's] privilege to operate a motor vehicle in this state is revoked for a period of ten (10) years from the date of this order").  Thus, under the terms of the order, which were not limited as to time frame, the prohibition against driving was in effect when appellant was stopped.  Furthermore, the order did not mislead appellant about whether he remained under the driving prohibition.  See Manning, 22 Va. App. at 256, 468 S.E.2d at 707; cf. Davis, 12 Va. App. at 248-49, 402 S.E.2d at 712-13.  Indeed, appellant's testimony shows he was aware that he remained under the driving prohibition.

Finally, as noted, the order revoked appellant's "privilege to operate a motor vehicle."  The order clearly and unambiguously states that appellant was forbidden to drive.  Appellant clearly understood that the order prohibited him from driving.  Accordingly, we find no merit in appellant's argument that the order prohibiting him from operating a motor vehicle provided no notice that he was not to drive a motor vehicle.

For the foregoing reasons, appellant's conviction is

affirmed.

                                                  <u>Affirmed.</u>