COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Elder and Clements
Argued at Richmond, Virginia


WILLIAM MICHAEL HUMPHREY

                                             OPINION BY
v.    Record No. 1982-00-2        JUDGE LARRY G. ELDER
                                        OCTOBER 23, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
Thomas B. Hoover, Judge

Steven D. Benjamin (Betty Layne DesPortes;
Benjamin & DesPortes, P.C., on briefs), for
appellant.

Robert H. Anderson, III, Senior Assistant
Attorney General (Mark L. Earley, Attorney
General, on brief), for appellee.


William Michael Humphrey (appellant) appeals from his jury trial conviction for possessing a firearm after having been convicted of a felony in violation of Code § 18.2-308.2. On appeal, he contends the trial court erroneously concluded that he could not assert necessity or self-defense as a defense to the charge and, therefore, erroneously rejected a proffered jury instruction on self-defense. We hold that the common law defense of necessity remains available, upon an appropriate factual predicate, as a defense to a charge of possessing a firearm after having been convicted of a felony under Code § 18.2-308.2. Here, the evidence, viewed in the light most favorable to appellant, entitled him to such an instruction.

Therefore, we reverse his conviction and remand for additional proceedings consistent with this opinion.[1]

## I.

## BACKGROUND

In reviewing the trial court's refusal to grant a proffered jury instruction, we view the evidence in the light most favorable to appellant. See, e.g., Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992). So viewed, the evidence showed that appellant, a convicted felon, had actual possession of a shotgun long enough to fire two shots.

On the evening of December 29, 1999, appellant was at his house trailer with Mark King. The trailer was located "in the woods" of New Kent County on property owned by appellant's father. A few minutes after King arrived, sometime after dark, Phillip Skipper and his brother, Franky Skipper, drove up to appellant's trailer and appeared as if they had been drinking. The four then "[sat] around . . . drinking" and "having a good time." Appellant had consumed six beers during the course of the evening from about 6:00 p.m. forward. Within an hour or so,

---

[1] The trial court implied that appellant was guilty of the charged offense "even if we took away the evidence [of what] occurred on [December 29, 1999]," because circumstantial evidence established that appellant "took [the gun] . . . and put it in the shed" several days earlier. For purposes of retrial, we note that the indictment charged appellant with possession on December 29, 1999, not some other date, and that the conviction order was for the December 29, 1999 offense. The evidence recited by the trial court, therefore, would not support appellant's conviction on the current indictment.

appellant's girlfriend arrived at the trailer, and appellant asked the others to leave.  King prepared to go, but the Skippers resisted appellant's request.  Appellant then complained to Phillip Skipper that he had told Phillip not to bring Franky to appellant's trailer any more because Franky had stolen appellant's Coleman lamp.  When the Skipper brothers "started giving [appellant] a hard time," appellant asked them to leave his property and told them they were trespassing. "[N]o fists or [violence]" were involved and no weapons were displayed, but the discussion involved "heated" words and "cussing."  Franky Skipper "threatened [appellant]," telling him, "I will get you, you son of a bitch, or something like that," and "I'll . . . fix your ass."  King then drove away, and the Skippers followed behind him in their white pickup truck bearing the logo, "James River Heating & Air Conditioning," in blue lettering, with Phillip Skipper at the wheel.

Fifteen to twenty minutes later, as appellant was turning off the light in the trailer's kitchen, appellant and his girlfriend heard gunshots.  Appellant called the police to report a shooting in progress.  He then opened the front door and saw flashes of gunfire coming from the bottom of the driveway in the direction of his home.  The gunfire was coming from the passenger side of the same white pickup truck that the Skippers had been driving earlier.  The shooter was leaning across the hood of the truck from the passenger side, but

appellant could not see the shooter or the driver well enough to identify either of them.

The truck eased closer and the shooting continued. Appellant testified that "[he] was in fear for [his] life and [his] girlfriend's life, too." He told her to go to the bedroom, which was toward the back of the trailer, because he "[did not] want her to get hit" by gunfire. Appellant then ran twenty-five to thirty yards, directly through the line of fire, to a nearby shed owned by his father. From the shed, appellant retrieved a shotgun. Appellant's father had left the shotgun on appellant's front porch several days earlier, and appellant had moved the shotgun to the shed at his father's request. Appellant ran back to the front porch and fired two shots into the air "just to try to scare them away . . . just till the police got there." The occupants of the truck may have fired an additional shot or two but left almost immediately. Appellant then tossed the shotgun on top of his trailer, re-entered the house, and called the police a second time.

Officer Christopher Spare arrived fourteen minutes after appellant first called the police to report gunshots. When Officer Spare first arrived, appellant was not forthcoming about the shotgun he had retrieved, but he eventually told Spare he was a convicted felon and that the firearm was atop his trailer. Appellant and Spare inspected the trailer for evidence of gunshot damage but were unable to find any bullet holes that

night.  A few days later, appellant observed a bullet hole in the front side of the trailer, near the spot in the kitchen where appellant was standing when the shooting first began.

Appellant was indicted and tried for possessing or transporting a firearm, on or about December 29, 1999, after having been convicted of a violent felony.  At trial, appellant admitted that he was a convicted felon and that he knew he was not allowed to possess a firearm.  He testified that he feared for his life and wanted to protect himself and his girlfriend and that he "had no other choice at the time," because the Skippers had threatened him and he had already called the police.  He said "[A] trailer is not the perfect place to be hiding when you're being shot at," and he testified he thought the Skippers could "[b]ust right through [the trailer] door" if he did not take steps to stop them.  Appellant's girlfriend agreed that she and appellant "[were not] very well protected inside the trailer."  When appellant was asked why he did not retreat to the back of the trailer or into the woods when the shooting began, appellant said, "I'm not going to be found . . . dead in the woods, me and my girlfriend.  I had to do what I had to do."

Appellant "put forward a defense of duress and necessity" and proffered the following jury instruction:

> If you believe that [appellant] was
> without fault in provoking the altercation
> and if you further believe that [appellant]

reasonably feared, under the circumstances
as they appeared to him, that he was in
danger of being killed or that he was in
danger of great bodily harm, then his
actions were in self-defense and you shall
find [appellant] not guilty.

The trial court refused the instruction, giving multiple reasons for doing so. First, it ruled, as a matter of law, that appellant "[did] not have the right to use a firearm in self-defense" because he was a convicted felon. In so ruling, it adopted the reasoning asserted by the Commonwealth's attorney--that the statute prohibiting possession of a firearm by a convicted felon contained exceptions but did not include an exception for self-defense or necessity, which constituted an implicit rejection of such an exception. Second, it ruled that the evidence failed to establish sufficient danger, stating,

Well, if it's safe enough for his girlfriend
to go to the rear bedroom of the trailer to
get as far away from the line of fire -- he
instructs her to do that[,] [h]e could have
done the same in regards to the self-defense
instruction. He didn't tell her . . . let's
stay out in the woods to get out of the
house.

Third, the trial court adopted the Commonwealth's argument that "even if we took away the evidence [of what] occurred on [December 29, 1999,] [appellant] still knowingly possessed the gun having been convicted of a felony" because circumstantial evidence established that "he took [the gun] . . . and put it in the shed" several days earlier.

II.

ANALYSIS

A.

AVAILABILITY OF NECESSITY DEFENSE TO CHARGE OF
POSSESSION OF A FIREARM BY A CONVICTED FELON

Appellant contends the common law defense of necessity remained available as a defense to a charge of possessing a firearm after having been convicted of a felony pursuant to Code § 18.2-308.2, despite that code section's inclusion of specific exceptions for members of the armed services, law enforcement officers and those pardoned by the Governor. We agree and hold that the legislature's inclusion of exceptions for certain professions and for convicted felons who have been pardoned does not indicate an intention to abrogate the common law defense of necessity.

"The law of self-defense is the law of necessity." McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

> The [common law] defense of necessity
> traditionally addresses the dilemma created
> when physical forces beyond the actor's
> control render "illegal conduct the lesser
> of two evils." . . . The essential elements
> of this defense include: (1) a reasonable
> belief that the action was necessary to
> avoid an imminent threatened harm; (2) a
> lack of other adequate means to avoid the
> threatened harm; and (3) a direct causal
> relationship that may be reasonably
> anticipated between the action taken and the
> avoidance of the harm.

Buckley v. City of Falls Church, 7 Va. App. 32, 33, 371 S.E.2d 827, 827-28 (1988) (quoting United States v. Bailey, 444 U.S. 394, 410, 100 S. Ct. 624, 634, 62 L. Ed. 2d 575 (1980)). "[T]he legislature may abrogate the common law rule by choosing to resolve the conflicting public policy matters by the enactment of law." Long v. Commonwealth, 23 Va. App. 537, 543, 478 S.E.2d 324, 327 (1996). Thus, "[t]he defense of necessity is available only in situations wherein the legislature has not itself, in its criminal statute, made a determination of values. If it has done so, its decision governs.'" Id. (quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.4(a), at 629 (1986)). However,

> [t]he common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended. When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.

Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988) (citations omitted) (emphasis added).

We applied these principles in Long, 23 Va. App. 537, 478 S.E.2d 324, and Murphy v. Commonwealth, 31 Va. App. 70, 521 S.E.2d 301 (1999). In Long, we held that the legislature intended to abrogate the common law defense of necessity in

cases involving the operation of a motor vehicle by a habitual offender, a violation of Code § 46.2-357. 23 Va. App. at 543-44, 478 S.E.2d at 326-27. In enacting that code section, the legislature "chose to relegate the factual circumstances which would give rise to the common law defense of necessity to the punishment phase of the habitual offender proceedings." Id. at 544, 478 S.E.2d at 327. We held that "[t]his decision was, in effect, a determination . . . that there could be no guilt-nullifying justification for an habitual offender, twice convicted of driving after having been adjudicated an habitual offender, to drive" and that "the legislature intended to abrogate the common law defense of necessity." Id.

In Murphy, by contrast, we held the legislature effected a more limited abrogation of the common law defense of necessity. 31 Va. App. at 75, 521 S.E.2d at 303. Murphy involved Virginia's statutes criminalizing the possession of marijuana but excepting marijuana possessed pursuant to a valid prescription for the treatment of cancer or glaucoma. Id. at 74, 521 S.E.2d at 302 (citing Code § 18.2-251.1). Murphy asserted a necessity defense, claiming he possessed and used the marijuana found in his possession to alleviate debilitating migraine headaches. Id. at 73, 521 S.E.2d at 302. We held as follows:

> [T]he legislative history of the statute
> manifests that the General Assembly has
> significantly limited the availability of

> the defense of necessity for individuals who
> use marijuana for medicinal purposes. In
> restricting the legitimate medicinal use of
> marijuana to cases involving cancer or
> glaucoma, the legislature evinced its intent
> to circumscribe the value judgment an
> individual can make with respect to its use
> for treating other conditions. To that
> extent, the common law defense of necessity
> is abrogated and unavailing in [Murphy's]
> case.

Id. at 75, 521 S.E.2d at 303 (citations omitted) (emphasis added). Because the legislature's enactment covered only medicinal uses, it "[did] not encompass the entire subject covered by the common law," and thus "it abrogate[d] the common-law rule only to the extent that its terms [were] directly and irreconcilably opposed to the rule," Boyd, 236 Va. at 349, 374 S.E.2d at 302, i.e., only as to a claim of necessity for possession of marijuana for medicinal reasons.

Code § 18.2-308.2, the statute at issue in appellant's case, provides in relevant part as follows:

> A. It shall be unlawful for . . . any
> person who has been convicted of a felony
> . . . to knowingly and intentionally possess
> or transport any firearm . . . .
> B. The prohibitions of subsection A shall
> not apply to (i) any person who possesses a
> firearm or other weapon while carrying out
> his duties as a member of the armed forces
> of the United States or of the National
> Guard of Virginia or of any other state,
> (ii) any law-enforcement officer in the
> performance of his duties, or (iii) any
> person who has been pardoned or whose

          political disabilities have been removed
. . . .[2]

Id. (footnote added).

     Code § 18.2-308.2, unlike Code §§ 18.2-251.1 and 46.2-357, provides what amounts to an exemption for limited categories of people based on profession or status rather than necessity and, therefore, does not abrogate the common-law necessity defense. Thus, we conclude the trial court erred in holding the defense of necessity or self-defense may never be asserted to a charge of possession of a firearm by a convicted felon. See United States v. Panter, 688 F.2d 268, 271-72 & n.4 (5th Cir. 1982) (holding necessity defense available to charge of violating 18 U.S.C. § 1202(a)(1), federal statute which prohibits convicted felons from possessing weapons but excepts prisoners entrusted with firearms by a competent authority and ex-felons who have been pardoned).[3]

---

    [2] Code § 18.2-308.2 was amended effective July 1, 2001. It now prevents a convicted felon from "knowingly and intentionally possess[ing] or transport[ing] any (a) firearm or (b) stun weapon or taser . . . except in such person's residence or the curtilege thereof . . . ." 2001 Va. Acts, chs. 811, 854 (emphasis added).

    [3] A majority of other states having considered the issue follow this approach. See Sara L. Johnson, Annotation, Fact that Weapon was Acquired for Self-Defense or to Prevent its use Against Defendant as Defense in Prosecution for Violation of State Statute Prohibiting Persons Under Indictment for, or Convicted of, Crime from Acquiring, Having, Carrying, or Using Firearms or Weapons, 39 A.L.R.4th 967 (1985 & Supp. 2001); see also In re Taylor, 636 So. 2d 1246, 1247 (Ala. 1993); Marrero v. State, 516 So. 2d 1052, 1054-56 (Fla. Dist. Ct. App. 1987); People v. Govan, 523 N.E.2d 581, 585-86 (Ill. Ct. App. 1988);

"[The legislature] in enacting criminal
statutes legislates against a background of
Anglo-Saxon common law . . . ."  Part of
this common law is the doctrine of
self-defense. . . .  [S]tatutes rarely
enumerate the defenses to the crimes they
describe. . . .  We do not believe that [the
legislature] intended to make [convicted
felons] hapless targets for assassins.  The
right to defend oneself from deadly attack
is fundamental.  [The legislature] did not
contemplate that [Code § 18.2-308.2] would
divest convicted felons of that right.

Id. at 271 (quoting Bailey, 444 U.S. at 415 n.11, 100 S. Ct. at

637 n.11).

B.

ENTITLEMENT TO PROFFERED INSTRUCTION
UNDER THE FACTS OF THIS CASE

We hold next that the evidence, viewed in the light most

favorable to appellant, entitled appellant to have the jury

instructed on necessity.

In reviewing the trial court's refusal to grant a proffered

jury instruction, we view the evidence in the light most

favorable to appellant.  See, e.g., Boone v. Commonwealth, 14

Va. App. 130, 131, 415 S.E.2d 250, 251 (1992).  "A defendant is

entitled to have the jury instructed . . . on those theories of

---

State v. Blache, 480 So. 2d 304, 308 (La. 1985); Commonwealth v.
McCambridge, 690 N.E.2d 470, 474 (Mass. App. Ct. 1998); State v.
Crawford, 521 A.2d 1193, 1197-1201 (Md. Ct. App. 1985); State v.
Castrillo, 819 P.2d 1324, 1328-31 (N.M. 1991); Conaty v. Solem,
422 N.W.2d 102, 104 (S.D. 1988); State v. Jeffrey, 889 P.2d 956,
958 (Wash. Ct. App. 1995); State v. Coleman, 556 N.W.2d 701,
705-06 (Wis. 1996).  But see State v. Harrington, 461 N.W.2d
752, 754 (Neb. 1990).

the case" that are supported by "more than a scintilla" of evidence.  Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986).

"A person who reasonably apprehends [imminent] bodily harm by another is privileged to exercise reasonable force to repel the assault."  Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989).  As set out above, the essential elements of the necessity defense, which allows a convicted felon to possess a firearm for self-defense,[4] include "(1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm."  Buckley, 7 Va. App. at 33, 371 S.E.2d at 827-28.

"[W]hether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he

_____

[4] Courts and commentators disagree over whether the appropriate label for the defense is self-defense, necessity or duress.  See Panter, 688 F.2d at 272 n.7 (discussing self-defense and necessity and holding that accused was entitled to instruction under either); Castrillo, 819 P.2d at 1328 & n.2 (comparing justification defenses of duress and necessity to self-defense).  The justification defenses of duress and necessity are similar in that both require that "the perceived harm must be imminent."  Castrillo, 819 P.2d at 1328 n.2. Self-defense is similar to duress and necessity in that it "provides a justification for an otherwise criminal act; strictly speaking, however, it is not a defense to possession, although it may justify the possession."  Id.

acted."  McGhee, 219 Va. at 562, 248 S.E.2d at 810.  "It is not essential to the right of self-defense that the danger should in fact exist."  Id.  However, "the test is not [merely] whether the accused thought or believed at the time of the killing that he was in imminent danger of great bodily harm. . . .  He [both] must have believed and must have had reasonable ground to believe, at the time, that he was in such danger."  Perkins v. Commonwealth, 186 Va. 867, 877, 44 S.E.2d 426, 430 (1947).[5]

Implicit in the application of such a defense to the crime of possessing a firearm after having been convicted of a felony is that the felon may possess the weapon only so long as is necessary to protect himself from the imminent threat.  See, e.g., Panter, 688 F.2d at 272.  Necessity provides no defense to a charge of possession of a firearm by a convicted felon if the felon takes possession of the firearm before the threat becomes imminent or retains possession longer than required after the danger has passed.  See, e.g., id.; see also Marrero v. State, 516 So. 2d 1052, 1055-56 (Fla. Dist. Ct. App. 1987) (holding whether accused retained possession longer than necessary was question of fact).

---

[5] Some jurisdictions require proof that an imminent threat actually exists.  See, e.g., United States v. Gant, 691 F.2d 1159, 1162 (5th Cir. 1982).  Others have adopted the test we apply here, permitting assertion of the defense where the accused reasonably believes he faces an imminent threat.  See Coleman, 556 N.W.2d at 706 & n.13.

The evidence here, viewed in the light most favorable to appellant, supported a necessity instruction because it established that appellant was without fault in provoking the altercation, that he reasonably feared he was in imminent danger of being killed or seriously injured at the time he took possession of the weapon on December 29, 1999,[6] that he lacked other adequate means to avoid the threatened harm, and that he

[6] We have held that, under appropriate circumstances, constructive possession of a firearm may support a conviction for possession of a firearm by a convicted felon. See Blake v. Commonwealth, 15 Va. App. 706, 707-09, 427 S.E.2d 219, 220-21 (1993) (holding accused constructively possessed firearm which was in actual possession of his companion while accused and companion acted jointly to commit robbery). Here, however, neither the Commonwealth nor the trial court took the position that appellant constructively possessed the firearm earlier on December 29, 1999, before he took actual possession of it, presumably because the evidence indicated the firearm was located in a storage shed which was owned and used by appellant's father and located on property owned by appellant's father. The trial court gave the model jury instruction for the charged offense, which includes as an element that "the defendant knowingly and intentionally possessed or transported a firearm." 1 Virginia Model Jury Instructions--Criminal G18.620 (1998 repl. ed. & 1999 Supp.). The trial court did not instruct the jury on the theory of constructive possession. Compare id. with id. 22.330 (1998 repl. ed. & 2000 Supp.) (defining "possession" of a controlled substance as "actual physical possession," in which "the substance is found on the person," or "constructive possession," in which "the person has dominion or control over the substance"). These instructions "constitute the law of the case, and they do not incorporate the theory of [constructive possession]. Accordingly, we . . . make our decision guided by the principles enunciated in the instructions independent of that theory." Hoar v. Great Easter Resort Mgt., Inc., 256 Va. 374, 389, 506 S.E.2d 777, 787 (1998) (holding in civil case that instruction of jury on assumption of the risk without "incorporat[ion of] the theory of inherent risks" prevented appellate court from considering whether theory of "inherent risks" required judgment for defendant as a matter of law).

disposed of the weapon immediately after the danger had passed. Appellant's instruction as proffered was not an accurate statement of the law because it did not require proof that the danger was imminent or that appellant lacked other adequate means to avoid the threatened harm.  However, because necessity was appellant's "sole defense" to the charged crime and appellant gave testimony supporting that defense, the trial court had an affirmative duty to give a corrected instruction to the jury.  See Bryant v. Commonwealth, 216 Va. 390, 392-93, 219 S.E.2d 669, 671 (1975); see also Atkins v. Commonwealth, 257 Va. 160, 178, 510 S.E.2d 445, 456 (1999) (reaffirming Bryant's principle that court has duty to correct erroneous jury instruction and give it in proper form "when the principle of law is materially vital to [the] defendant in a criminal case").

The Commonwealth contends that appellant's "admitted misconduct prior to the alleged shooting disentitled him to the justifiable self-defense instruction that he submitted." However, the Commonwealth does not identify the misconduct on which it purports to rely.  Viewing the evidence in the light most favorable to appellant, as we must in considering the jury instruction issue, the record contains no evidence that appellant engaged in any misconduct which would deprive him of the right to have the jury instructed on necessity.

As the Commonwealth acknowledges, misconduct sufficient to disentitle an accused to a justifiable self-defense instruction

must be misconduct which caused the need to defend oneself. McGhee, 219 Va. at 562, 248 S.E.2d at 810.  Therefore, as we held in the previous section, the fact that appellant's unrelated misconduct caused him to become a convicted felon does not deprive him of the right to claim his actions were justified by necessity.  Further, as the Commonwealth acknowledges, "[t]he fact that a man has been drinking does not ipso facto deprive him of the right of self-defense, even though the necessity for the exercise of the right might not have arisen had neither he nor his aggressor been drinking."  Hawkins v. Commonwealth, 160 Va. 935, 941, 169 S.E. 558, 560 (1933); see Gilbert v. Commonwealth, 28 Va. App. 466, 473, 506 S.E.2d 543, 546-47 (1998) (holding that accused was not at fault in inviting aggressors to his house for drinks).

Rather, the evidence, viewed in the light most favorable to appellant, establishes that the Skipper brothers arrived at appellant's trailer already intoxicated and that appellant, Mark King, and the Skipper brothers "[sat] around . . . drinking" and "having a good time."  When appellant's girlfriend arrived at the trailer, appellant asked his guests to leave, but the Skipper brothers resisted.  Although appellant mentioned his belief that Franky Skipper previously had stolen a lamp from appellant, reminded Phillip Skipper that he had told Phillip not to bring Franky to appellant's trailer again, and told the men they were trespassing, "[n]o fists or [violence]" were involved

and no weapons were displayed. Appellant's statements to the Skippers did not constitute misconduct sufficient to deprive appellant of the right to claim self-defense.

The evidence, viewed in the light most favorable to appellant, also established that appellant reasonably feared he was in imminent danger of being killed or seriously injured when shots were fired at his trailer a short time later. Franky Skipper, before departing appellant's trailer as a passenger in a white "James River Heating & Air Conditioning" pickup truck driven by his brother, had threatened appellant, telling appellant, "I will get you, you son of a bitch," and "I'll . . . fix your ass." No more than twenty minutes later, the same pickup truck returned and drove up appellant's driveway as the passenger leaned across the hood and fired shots at appellant's trailer. Appellant believed the shooter was Franky Skipper and testified that "[he] was in fear for [his] life and [his] girlfriend's life, too." He called 911 and then retrieved his father's shotgun from his father's nearby shed, even though he had to run through the line of fire to do so, because he feared that if he did not arm himself before the police could respond to his rural location, the Skippers would break down the trailer door or pursue him and his girlfriend into the woods. Appellant testified that he feared for his and his girlfriend's lives and that he "had no other choice at the time." Finally, appellant testified he threw the shotgun onto the roof of his trailer

immediately after he had succeeded in chasing his assailants away.

The evidence, viewed in the light most favorable to appellant, supported a necessity instruction because it established that appellant's possession of the shotgun on December 29, 1999 was for the purpose of justifiable self-defense and lasted only as long as necessary for appellant to defend himself and his girlfriend.  Thus, the trial court's failure to give a proper instruction was reversible error.

### III.

For these reasons, we reverse appellant's conviction and remand to the trial court for additional proceedings consistent with this opinion if the Commonwealth be so advised.

<u>Reversed and remanded.</u>