COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia


DAVID M. GREEN

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1790-22-2              JUDGE CLIFFORD L. ATHEY, JR.
                                                  MAY 21, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
R. Michael McKenney, Judge

Paul C. Galanides for appellant.

Angelique Rogers, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted David M. Green ("Green") of possessing a firearm after being convicted of

a felony.  On appeal, Green contends that the Circuit Court of Lancaster County ("trial court") erred

by refusing to admit certain evidence that he asserts was relevant to his necessity defense.  Finding

no reversible error, we affirm the trial court's judgment.

I.  BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

On July 2, 2021, Lancaster County Sheriff's Deputy Edward Fisher ("Deputy Fisher") arrived at Green's residence in response to a reported burglary. Both Green and his girlfriend, Erin Haley ("Haley"), were present at the residence and subsequently interviewed by the deputy sheriff. Upon arrival, Deputy Fisher noted that Green appeared intoxicated and that Haley had facial injuries consistent with a recent assault. Deputy Fisher then interviewed Haley who reported that she did not live with Green and did not wish to "press[] charges" against him for "hitting her." Green, a convicted felon, subsequently advised Deputy Fisher that he went to the sheriff's office earlier that day to "follow up" on a criminal complaint he filed regarding a prior burglary at his residence. Green stated that when he returned home, he noticed that someone had "ransacked" his house "while he was away," so he contacted law enforcement.

Based on Green's concerns, Deputy Fisher searched the residence and saw no "signs of forced entry." While searching the residence, he found a shotgun beside Green's bed. Green also retrieved another shotgun from his bedroom closet and gave it to Deputy Fisher. Green claimed that his father "had brought him the shotgun[s] because of the break-ins and the fact that he had nothing to defend himself." Green maintained that since the first burglary, he had "fear[ed] for his life" and occasionally "sle[pt]in his car" because he was "afraid to go in the house." Green's father arrived sometime later and claimed ownership of the firearms. Green was subsequently charged with possessing a firearm after being convicted of a felony.[1]

Before trial, the Commonwealth moved to prohibit Green from introducing phone calls that he made to the Lancaster Sheriff's Office on June 11, 2021, and July 2, 2021, in order to establish a "necessity" defense to unlawfully possessing the firearms, arguing that the phone calls contained inadmissible hearsay. Alternatively, the Commonwealth requested the

---

[1] At trial, the Commonwealth played a portion of a video from Deputy Fisher's body worn camera depicting his actions during the investigation, but neither party introduced the video as a formal exhibit, and it is not part of the record. *See* Rule 5A:7.

opportunity to present rebuttal evidence to negate Green's necessity defense. Following

argument, the trial court ruled that Green could "testify" and "call witnesses regarding" the

phone calls but could not introduce the calls themselves or any related police reports because

they were "inadmissible hearsay."[2]

On the day of trial, the parties revisited the trial court's pretrial ruling. The

Commonwealth stated that it expected Green to attempt to introduce a police report regarding an

alleged burglary that occurred at his residence on June 11, 2021. The Commonwealth intended

to object to the report "on relevance grounds," but "if the Court overrule[d] that," it would

stipulate to the report's admissibility because the deputy who prepared it was not present. The

trial court reserved ruling on the issue until it heard the evidence at trial.

At trial, Green sought to introduce a copy of a police report from the alleged June 11,

2021 burglary. Green proffered the contents of the report, which stated that around 5:00 a.m. on

June 11, 2021, he called police and reported that around 2:30 a.m. that day, he and Haley arrived

at his residence and saw "an unknown man . . . standing on the front porch." The man "walked

away" as Green and Haley approached. Green's house was "unlocked" and "there were no signs

of forced entry," although "several bedrooms were ransacked." Green reported that "nothing

was missing," but Haley noticed that some of her prescription pills were gone.

The Commonwealth objected to the report, arguing that the June 11, 2021 incident was

too remote to prove that Green reasonably feared the imminent threat of harm necessary to

establish a necessity defense when he possessed the firearms on July 2, 2021. Green countered

that the report explained his "frame of mind and the reasonableness of his belief" that possessing

the firearms was necessary to protect himself from potential burglars. Additionally, Green

_____

[2] The record does not disclose the contents of the phone calls or include the transcript
from the relevant motion hearing.

proffered that he would testify "that there were other occasions throughout the spring of 2021 where he witnessed or saw things that made him believe other people were at the property." When Green attempted to further proffer that his father would have also testified that he gave the shotguns to Green about "three or four days" before July 2, 2021, the trial court sustained the Commonwealth's objection.[3] Specifically, the trial court ruled that the allegations in the police report, even if true, were irrelevant because the June 11, 2021 incident was too remote to be probative of a necessity defense. The trial court further found, in support of its ruling, that Green was not facing an imminent threat on July 2, 2021, and he could have used alternative means to protect himself. Accordingly, the court rejected Green's proffer of the police report.

After the close of the evidence and argument by counsel, the jury convicted Green of possessing a firearm after having been previously convicted of a felony. Green appealed.

## II. ANALYSIS

### A. *Standard of Review*

"On appeal, a court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Harvey v. Commonwealth*, 76 Va. App. 436, 475 (2023). "This Court will not reverse a trial court for errors 'that were harmless to the ultimate result.'" *Lienau v. Commonwealth*, 69 Va. App. 254, 269 (2018) (quoting *Carter v. Commonwealth*, 293 Va. 537, 544 (2017)); *see* Code § 8.01-678. Non-constitutional error is harmless if "the error did not influence the jury, or had but slight effect." *Holloman v. Commonwealth*, 65 Va. App. 147, 171 (2015) (quoting *Ramsey v. Commonwealth*, 63 Va. App. 341, 356 (2014)).

---

[3] Neither Green nor his father testified at trial.

B. *The trial court did not err by granting the Commonwealth's motion in limine excluding Green's evidence supporting his necessity defense.*

On appeal, Green argues that the police report from the June 11, 2021 incident was relevant because it demonstrated that he "fear[ed]for his personal safety following the repeated suspected intrusions of his remote residence," and, when combined with the other evidence at trial, justified his possession of the firearms on July 2, 2021, under the common law necessity defense. Additionally, Green appears to argue that the trial court's ruling was not harmless because, if introduced into evidence, the report would have entitled him to a jury instruction on the necessity defense. For the following reasons, we disagree.

We have held that "the common law defense of necessity remains available, upon an appropriate factual predicate, as a defense to a charge of possessing a firearm after having been convicted of a felony under Code § 18.2-308.2." *Humphrey v. Commonwealth*, 37 Va. App. 36, 40 (2001). To establish the necessity defense, a defendant must demonstrate "(1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm." *Id.* at 45 (quoting *Buckley v. City of Falls Church*, 7 Va. App. 32, 33 (1988)).

"[W]hether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted." *Id.* at 49 (alteration in original) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "It is not essential . . . that the danger should in fact exist." *Id.* "However, 'the test is not [merely] whether the accused thought or believed at the time" he possessed the firearms "that he was in imminent danger of great bodily harm. . . . He [both] must have believed and must have had reasonable ground to believe, at the time, that he was in such danger.'" *Id.* at 49-50 (alterations in original) (quoting *Perkins v. Commonwealth*, 186 Va. 867, 877 (1947)). Accordingly, "[n]ecessity provides no defense to a

- 5 -

charge of possession of a firearm by a convicted felon if the felon takes possession of the firearm before the threat becomes imminent or retains possession longer than required after the danger has passed." *Id.* at 50. Rather, one must reasonably believe that there is "an immediate, real threat to one's safety" for the defense to apply. *Edmonds v. Commonwealth*, 292 Va. 301, 306-07 (2016) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)).

Here, any error the trial court may have committed in excluding the police report was harmless because the report would not have influenced the jury or affected their verdict. We can be certain of this because even if the report had been admitted, the evidence would not support giving an instruction for the necessity defense. A jury instruction is proper only if, when "view[ed] in the light most favorable to the proponent of the instruction," "more than a scintilla of evidence" supports the instruction. *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). The record demonstrates that Green, a convicted felon, reported that his home was burglarized on June 11, 2021. At some point following this police report, but before July 2, Green subsequently obtained two shotguns from his father and kept them in his bedroom and closet because he generally feared that intruders might harm him. Moreover, when Green possessed the shotguns on July 2, 2021, he reported that someone had burglarized his home while he was away. *See Byers v. Commonwealth*, 37 Va. App. 174, 185 (2001) (holding that a necessity jury instruction was not warranted where the defendant carried a firearm for self-protection due to a "generalized fear" of potential harm from a man who previously shot him and threatened to return to "finish the job").

Viewed in the light most favorable to Green, that evidence fails to establish more than a "scintilla of evidence" that he reasonably feared an *imminent* threat of harm at the time he possessed the shotguns on July 2, 2021. *Watson*, 298 Va. at 207 (quoting *Payne*, 292 Va. at 869). Consequently, even if the trial court had not excluded the police report from the June 11,

- 6 -

2021 incident, Green would not have been entitled to instruct the jury on his necessity defense.

Thus, we can be confident that the exclusion of the report did not affect the jury's verdict.

Accordingly, any error in excluding the police report was harmless.

## III. CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed.*