COURT OF APPEALS OF VIRGINIA

Present: Judges Huff,[*] Ortiz and Raphael
Argued at Norfolk, Virginia


CURTIS LEROY ETHERIDGE

                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 0019-24-1                      JUDGE DANIEL E. ORTIZ
                                                    FEBRUARY 11, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
James C. Hawks, Judge Designate

Eric Weathers, Assistant Public Defender (Kelsey Bulger, Deputy
Appellate Counsel; Virginia Indigent Defense Commission, on
briefs), for appellant.

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Curtis Leroy Etheridge of possessing a firearm after being convicted of

a violent felony in violation of Code § 18.2-308.2(A) and sentenced him to five years'

incarceration. The trial court sentenced Etheridge consistent with the jury's verdict. Etheridge

challenges his conviction and sentence, arguing that he acted out of necessity and Code

§ 18.2-308.2(A) violates his rights under the Second Amendment to the United States

Constitution. Finding no error, we affirm the trial court's judgment.

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

_____

[*] Judge Huff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2024.

[**] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

At around 7:00 a.m. on August 14, 2022, Etheridge was awakened by banging noises at his house's front door. He took a pistol from the kitchen and went to the door, where he saw a shirtless man on the porch; he did not know the man, who was later identified as Xavier Edwards.

Etheridge unlocked and opened the front door and storm door to talk with Edwards. Edwards demanded entry to the house to get a woman he thought was there. Etheridge told Edwards that nobody of that description was in the house. Edwards replied that he was "coming in the fucking house" and hit Etheridge in the face. Etheridge pushed Edwards, who fell down the steps.

A neighbor's security camera video depicts Etheridge opening the door, hitting Edwards—knocking him down the steps—then following Edwards to the walkway. As the men faced each other, Etheridge hit Edwards then fired the handgun while it was pointed away from Edwards. As the men continued fighting and moving around the yard, Etheridge fired the gun into the ground four more times.

About three minutes into the incident, Edwards knocked Etheridge to the ground, where the men continued struggling. Less than two minutes later, Etheridge's wife, daughter, and a bystander separated them and restrained Edwards until law enforcement officers arrived. Etheridge hid the handgun in an orange shop vac in his garage before officers arrived.

Chesapeake Police Officer Miya Mitchell-Bray responded to a "shots heard call" and found Edwards lying face down with his arms restrained by zip ties and fishing line. Etheridge told her that Edwards had been pulling on the storm door, trying to get in the house. Etheridge recounted that after he opened the door, Edwards immediately hit him. Officer Mitchell-Bray asked if Etheridge "own[ed] a firearm"; he replied, "No, ma'am."

Chesapeake Police Detective Stephen Weir also talked with Etheridge about what had happened, and Etheridge repeated that Edwards had been banging on his door, trying to get in the house, and Edwards hit him as soon as he opened the door. Etheridge did not mention having a firearm. After viewing a neighbor's security camera video, Detective Weir told Etheridge that the video depicted him holding and shooting a gun multiple times, and asked where the gun was. Etheridge said it was in an orange shop vac in his garage, which is where an officer found it.

At trial, the Commonwealth introduced evidence of Etheridge's 2004 felony conviction for unlawful wounding in violation of Code § 18.2-51. Officer Mitchell-Bray and Detective Weir testified about their interactions with Etheridge, including that he did not admit to having a firearm until Detective Weir confronted him. The Commonwealth also introduced into evidence the firearm Etheridge used, which laboratory testing confirmed was an actual firearm; Etheridge also stipulated that it was a firearm.

After the Commonwealth's case-in-chief, Etheridge moved to strike the evidence. Although he had used a gun during the incident and been convicted of a violent felony, he argued that as a matter of law, "under the circumstances" of the incident, he had "the fundamental right to defend himself" and he acted only in a "defensive fashion." The Commonwealth responded that whether Etheridge had a "necessity defense" was a "fact question" of whether he was in "reasonable fear," but he had not yet put on evidence. The trial court agreed with the Commonwealth and denied the motion to strike.

Etheridge testified in his own defense that he took the gun from a kitchen cabinet as a "precaution" before going to check out the noise. He received the handgun from a neighbor as collateral for a loan about four months before the incident and planned to return it after being repaid. Etheridge first claimed that he thought he was allowed to possess a gun before admitting that he knew it was wrong to have it and that he had not volunteered to the officers that he had a firearm.

Etheridge maintained that he was "fearful" for his life and his wife and daughters' lives also; he knew his wife would be leaving the house soon. According to him, Edwards continued to insist on going in the house even after seeing Etheridge's gun, which he said Edwards told him he was not scared of. Etheridge denied ever pointing the gun at Edwards and asserted that he fired it only to get Edwards to leave and, later, to empty it so that Edwards could not use it against him. He also admitted, however, that he did not call the police at any point because he did not know he "was going to be in an altercation" or "needed to call" them and that he got the gun from the kitchen because he was "concerned" and "be[ing] cautious." Etheridge also admitted that he had been convicted of two other felonies involving lying, cheating, or stealing.

After all the evidence, Etheridge renewed his motion to strike on the same basis as before. He emphasized his testimony that he was defending himself during the incident. The trial court again found that the issue was a factual matter that was proper for the jury to decide. Accordingly, the trial court denied the renewed motion to strike.

The Commonwealth and Etheridge agreed on jury instructions and a verdict form. The instructions covered possession of a firearm, the elements of possession of a firearm by a felon, and the defense of necessity. The jury convicted Etheridge and, after the trial court gave the jury sentencing instructions, reached a sentencing verdict of five years' incarceration. The trial court continued the case for a presentencing report. At the sentencing hearing, Etheridge argued that he had "reacted in a very human and normal way" to a "lunatic at his front door" and asked the trial

court not to sentence him to the mandatory minimum sentence. By order of January 11, 2024, the trial court sentenced Etheridge to five years' incarceration, consistent with the jury's verdict. Etheridge appeals.

ANALYSIS

I. Etheridge did not establish the defense of necessity.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To sustain a conviction for possessing a firearm as a felon, the Commonwealth must prove that the defendant, after being convicted of a felony, "knowingly and intentionally possess[ed] . . . any firearm or ammunition for a firearm." Code § 18.2-308.2(A). That prohibition is tempered, however, by the common-law defense of necessity, which recognizes the fundamental "right to defend oneself from deadly attack." *Humphrey v. Commonwealth*, 37 Va. App. 36, 48 (2001) (quoting *United States v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982)).

- 5 -

Yet the defendant "may possess the weapon only so long as is necessary to protect himself from the *imminent* threat" and thus cannot benefit from the defense if he takes "possession of the firearm before the threat becomes imminent." *Id.* at 50. A defendant previously convicted "of a violent felony" must serve a "mandatory minimum term of imprisonment of five years." Code § 18.2-308.2(A).

A necessity defense to a charge of possessing a firearm as a felon requires the defendant to prove three elements. First, that he had "a reasonable belief" that his possession of the firearm "was necessary to avoid an imminent threatened harm," second, "a lack of other adequate means to avoid the threatened harm," and third, "a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm." *Small v. Commonwealth*, 292 Va. 292, 299 (2016) (quoting *Humphrey*, 37 Va. App. at 45). Only the first element is at issue here, which requires the defendant to demonstrate "an immediate, real threat to one's safety." *Id.* (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)).

Etheridge argues that the evidence proved that he acted out of necessity because he reasonably feared for his life and that of his wife and daughters. He asserts that he did not have other adequate means to avoid the harm Edwards threatened him with and emphasizes that Edwards was "not rational" and seemed unfazed by Etheridge's use of the weapon. Finally, he maintains that the evidence proved that his possession of the gun was "directly related" to avoiding the threat posed by Edwards.

Etheridge testified that he took possession of the firearm four months before the incident, as collateral for a loan to a neighbor. His uncontradicted testimony thus established that he possessed the firearm long before, and for a purpose unconnected to, an *imminent* threat. *Humphrey*, 37 Va. App. at 49. Etheridge therefore failed to prove that he possessed the firearm because of necessity, and the trial court did not err by denying his motions to strike the evidence.

II. Etheridge waived his constitutional arguments.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. A defendant must "*specifically* raise a legal challenge . . . to preserve that issue for appeal." *Hargrove v. Commonwealth*, 77 Va. App. 482, 504 (2023) (alteration in original) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 357 (2011)). He must "adequately alert the trial court to both the relief being sought and . . . the basis for that relief," and "the *precise* nature of the objection must be clear." *Id.* (alteration in original) (first quoting *Dickerson*, 58 Va. App. at 357; and then quoting *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329 (2021)). Thus, advancing "one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Id.* (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)).

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). "In determining whether the exception applies, the Court considers two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Id.* at 30 (quoting *Williams v. Commonwealth*, 294 Va. 25, 27-28 (2017)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 31 (quoting *Conley*, 74 Va. App. at 683). An appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Thus, an appellant "must show that either the conduct for which he was convicted is not a criminal offense or that

the record affirmatively establishes that an element of the offense did not occur." *Jiddou v. Commonwealth*, 71 Va. App. 353, 374 (2019) (quoting *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015)).

Etheridge argues that he had a "fundamental, constitutional right" to possess a firearm in his home to prevent "harm at the hands of an intruder." He relies on the Second Amendment to the United States Constitution, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). He contends that both his conviction and sentence violate his Second Amendment rights.

In Etheridge's motions to strike, he asserted a "fundamental right to defend himself." The Commonwealth's response to his argument, and the trial court's ruling on the motions, reflected an understanding that Etheridge asserted only the defense of necessity. He did not contest this understanding or otherwise inform the trial court that he also was asserting a constitutional argument and did not argue that despite his felony convictions, the United States Constitution guaranteed him the right to possess a firearm. His argument at the sentencing hearing also did not address the United States Constitution or present to the trial court any argument that he had a constitutional right to possess the firearm despite his previous conviction. Thus, Etheridge waived the constitutional arguments he now makes on appeal. Rule 5A:18. The evidence proved that he had been convicted of a felony and knowingly possessed the firearm for months before the incident, and so the ends of justice exception does not apply. Rule 5A:18; *Cornell*, 76 Va. App. at 31. We thus do not consider his arguments.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*