COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Clements and Kelsey
Argued at Salem, Virginia


JOHN MILTON SEATON

OPINION  BY
v.      Record No. 2273-02-3      JUDGE D. ARTHUR KELSEY
APRIL 13, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Charles N. Dorsey, Judge

John P. Varney (Office of the Public Defender, on brief), for
appellant.

Richard B. Smith, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


A jury found John Milton Seaton guilty of robbing a teller at the First National Exchange

Bank in Roanoke.  The jury recommended, and the trial court imposed, a thirty-year prison

sentence after learning that Seaton had been previously convicted of rape, unlawful wounding,

and robbery.  Seaton appeals both his conviction and his sentence.  Finding no error in either, we

affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That principle requires

us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as

true all the credible evidence favorable to the Commonwealth and all fair inferences that may be

drawn therefrom."  Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en*

*banc*) (citation omitted); see also Pollino v. Commonwealth, 42 Va. App. 243, 245-46, 590 S.E.2d 621, 623 (2004).

At about lunchtime on December 28, 2001, Seaton entered the First National Exchange Bank in Roanoke wearing gloves, a hooded sweatshirt, a toboggan cap (with eyeholes cut out of it) pulled down over his face, and work pants. He walked over to one of the bank tellers, Winona Callahan, and put a paper bag on the counter in front of her. Seaton then announced: "This is a bank robbery. Give me all of your money." Callahan replied, "you've got to be kidding." Seaton then conspicuously put one hand in his pocket, "shook" the bag in front of Callahan with the other hand, and warned that she "had ten seconds to put the money in the bag."

Callahan's supervisor, Melissa Hudson, and another employee were standing nearby. They heard Seaton's threats and saw his actions. Hudson described the situation as "very intimidating." After hearing the ten-second threat, Hudson was "very anxious" and "concerned for Ms. Callahan's safety." Hudson and Callahan's co-worker both instructed Callahan to "do what he tells you."

Enduring what she described as "probably the longest ten seconds of my life," Callahan began taking the money out of her top drawer and putting it into Seaton's paper bag. She had the presence of mind, however, to include banded "bait" money in the bills stuffed into the bag. Upon realizing what Callahan had done, Seaton "got really irritated" with Callahan. He showed his anger by tearing off the bands and throwing them in Callahan's direction. In response to this escalation, Callahan put the "rest of the money in the bag."

After receiving about $2,417 from Callahan, Seaton left the bank with the bag of money. A bank customer, Christopher Martin, saw Seaton leave. Martin had overheard Seaton make the this-is-a-bank-robbery announcement and issue the ten-second threat to Callahan. Once Seaton was out the door, Martin called 911 and got in his car to follow Seaton. Martin eventually lost sight of Seaton after having followed him for several blocks. Martin returned to the bank to report what he

had seen and heard. That afternoon, Seaton went to a convenience store and bought $800 worth of "beer, cigarettes, porno movies, [and] money orders." The police caught up with Seaton the next evening.

The grand jurors charged Seaton with robbery under Code § 18.2-58. At trial, both the Commonwealth and Seaton asked various questions seeking to prompt the eyewitnesses to describe their reactions to the incident. Callahan declared the ten seconds following Seaton's threat to be the "longest" ten seconds of her life. Even so, she testified, she did not feel emotionally "frightened." Callahan also said she did not "start giving" Seaton money until she received her supervisor's warning to do so. For her part, Hudson described the incident as "very intimidating." To put Callahan's frightless resolve in context, Hudson explained, you needed to know that Callahan is a "very outspoken individual."[1]

Without objection, the trial judge used a variation of the finding instruction for robbery found in the Virginia Model Jury Instructions, ch. 47, No. G47.100 (1998). Among other things, the instruction informed the jury that the Commonwealth must prove that Seaton took the money "against the will of the owner or possessor" by the use of "violence or intimidation." In a colloquy with the trial court, Seaton's counsel made clear he did not contest that Seaton committed the theft and overcame Callahan's will. "We're not contesting," he conceded, "whether this was against Ms. Callahan's will." "We're not contesting," he added, "that money was taken . . . ." What Seaton did contest was that he overcame Callahan's will by using violence or intimidation. On this narrow issue, Seaton requested an additional instruction defining "violence" and "intimidation" using

---

[1] Hudson also recalled Callahan, at some point, saying, "No, I'm not going to," when Seaton demanded the money. Callahan, however, testified that she did not recall "ever telling him no." Given that we review conflicting evidence in the light most favorable to the Commonwealth, we assume as true Callahan's testimony on this point.

selected language lifted from Bivins v. Commonwealth, 19 Va. App. 750, 454 S.E.2d 741 (1995). The trial judge refused the instruction, ruling that it was unnecessary.

During its deliberations, the jury sent a note to the judge asking: "Who had to be afraid? Miss Callahan or anyone in the bank?" With the agreement of Seaton and the Commonwealth, the judge answered: "Element number 5 in instruction number 2 [addressing the violence or intimidation element] refers to Winona Callahan." The jury thereafter found Seaton guilty.

During the sentencing phase, the Commonwealth introduced certified orders showing that Seaton had been previously convicted of rape, unlawful wounding, and robbery. Seaton objected to two orders from the Bedford Circuit Court: the first convicting him of rape, the second sentencing him on that conviction. Both orders bore the certification stamp of the Bedford Clerk of Court, noted the volume and page number of the order book from which they were copied, and reflected the signature of the deputy clerk verifying each order as a "copy teste." Seaton did not dispute that the copies were properly "certified, attested or exemplified" as exact duplicates of the original orders. Nor did he contest that, in fact, he was convicted of rape just as the orders said. The orders were nevertheless inadmissible, Seaton argued, because of the absence of the Bedford trial judge's signature.

The trial court overruled Seaton's objection to the two Bedford orders and imposed the thirty-year prison sentence recommended by the jury.

II.

On appeal, Seaton challenges his robbery conviction and sentence on four grounds. First, he argues that Callahan's comment that she was not "frightened" necessarily precludes the jury from finding intimidation. Second, he argues that the trial judge erred by permitting Hudson to testify about her concerns over Callahan's safety and her characterization of Seaton's conduct as "very intimidating." Third, Seaton claims the trial judge improperly refused to give the proffered

instruction from Bivins addressing the "violence or intimidation" element. Finally, Seaton claims

he should be resentenced because the trial judge erroneously admitted into evidence the two

Bedford orders showing his rape conviction. Finding none of his arguments persuasive, we affirm.

A. *Sufficiency of Evidence on Intimidation*

When addressing a challenge to the sufficiency of the evidence, we "presume the judgment

of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or

without evidence" to support it. Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (citations omitted).

Practically speaking, this means a jury's decision cannot be disturbed on appeal unless no "rational

trier of fact" could have come to the conclusion it did. Id. (quoting Jackson v. Virginia, 443 U.S.

307, 319 (1979)); Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en*

*banc*) ("We let the decision stand unless we conclude no rational juror could have reached that

decision."), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003) (*per curiam* opinion adopting reasoning of

*en banc* Court of Appeals opinion).

Under this standard, a reviewing court does not "ask itself whether *it* believes that the

evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318-19

(emphasis in original and citation omitted). It asks instead whether "*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at

257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319 (emphasis in original)); Crowder v.

Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003); Holmes v. Commonwealth, 41

Va. App. 690, 691, 589 S.E.2d 11, 11 (2003).[2] "This familiar standard gives full play to the

---

[2] This standard comes from Code § 8.01-680 — the basis for our appellate review of
factfinding in civil and criminal cases as well as bench and jury trials. The standard remains the
same for our sufficiency review of criminal cases, see, e.g., Crowder, 41 Va. App. at 663, 588
S.E.2d at 387; Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731
(1992), as it does for the Virginia Supreme Court's sufficiency review of civil cases, see, e.g.,
Norfolk & W. R. Co. v. Spencer, 104 Va. 657, 664, 52 S.E. 310, 313 (1905) (holding that "it is
impossible to say that reasonable men might not differ in their judgment upon the question . . .

responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). It also ensures that we remain faithful to our duty "not to substitute our judgment for that of the trier of fact, even were our opinion to differ." Crowder, 41 Va. App. at 663 n.1, 588 S.E.2d at 387 n.1 (citations and internal quotation marks omitted).

In this case, Seaton challenges the sufficiency of the evidence on a very narrow ground. He does not dispute the theft. Nor does Seaton deny that he took the money "against Ms. Callahan's will." What he challenges on appeal is the finding that he took the money against her will through the use of "intimidation."[3] In particular, Seaton concludes Callahan's testimony that she was not "frightened" eliminates — as a matter of law — any legal basis for his conviction. We disagree.

"Robbery is a common law crime against the person, which is proscribed statutorily by Code § 18.2-58." Clay v. Commonwealth, 30 Va. App. 254, 258, 516 S.E.2d 684, 685 (1999) (*en banc*). The common law defines robbery as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Commonwealth v. Jones, 267 Va. 284, 286, 591 S.E.2d 68, 70 (2004) (quoting

---

and therefore this court would not be warranted in disturbing the verdict of the jury"); Andrews v. Ring, 266 Va. 311, 322, 585 S.E.2d 780, 786 (2003) (noting that a fact issue "presents a jury question unless reasonable minds cannot differ"), and for the trial court's review of a motion to set aside a jury verdict, see, e.g., Blake Constr. Co./Poole & Kent v. Upper Occoquan Sewage Auth., 266 Va. 564, 571, 587 S.E.2d 711, 715 (2003) (the power to set aside a verdict under Code § 8.01-680 can be exercised only if no "reasonable" jurors could "differ in their conclusions of fact to be drawn from the evidence").

[3] As the jury instruction correctly stated, the "violence or intimidation" element of the offense is a disjunctive test under common law. Because of our holding, we need not address the Commonwealth's alternative argument that "violence" was proven here on the theory that Seaton implied he had a concealed weapon when he issued his ten-second threat. Cf. Chappelle v. Commonwealth, 28 Va. App. 272, 273, 504 S.E.2d 378, 378 (1998) (finding "violence" proven because an armed robber told the victim to "give him money" and the victim did so even though he admitted he "felt no fear").

George v. Commonwealth, 242 Va. 264, 277, 411 S.E.2d 12, 20 (1991), and Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964)); see also Spencer v. Commonwealth, 42 Va. App. 443, 448, 592 S.E.2d 400, 402-03 (2004).

Seaton's argument fails because of his inexact use of similar, but not identical, terms. *Fright* is not an exact synonym of fear or intimidation, at least as used in the lexicon of the common law of robbery. As Professor LaFave explains, "the word 'fear' in connection with robbery does not so much mean 'fright' as it means 'apprehension'; one too brave to be *frightened* may yet be apprehensive of bodily harm" and, therefore, make a calculated decision to surrender money to the robber. 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(d), at 187-88 (2d ed. 2003) (emphasis added). "When the pertinent test is cast in terms of a victim being put in 'fear' of injury, *it is not necessary that the victim be frightened*; it is necessary merely that he be reasonably apprehensive of injury." Charles E. Torcia, 4 Wharton's Criminal Law § 462, at 21 (15th ed. 1996) (emphasis added).

This subtle distinction, while seemingly semantic, protects a crucial aspect of the common law of robbery and can be found in some of its earliest restatements. Blackstone put it this way: "Yet this putting in fear does not imply, that any great degree of terror or *affright* in the party robbed is necessary to constitute a robbery: It is sufficient that so much force, or threatening by word or gesture, be used, as might create an apprehension of danger, or oblige a man to part with his property without or against his consent." 4 William Blackstone, Commentaries on the Law of England *242 (1769) (emphasis added and modern spelling used). In other words, a brave victim maintains her fortitude *despite* intimidation — but it is intimidation nonetheless. Cf. Spencer, 42 Va. App. at 446, 450-51, 592 S.E.2d at 401-03 (affirming carjacking conviction, a form of robbery, even though the victim fearlessly "stood her ground" but nonetheless moved away from the car because of the risk of being "run over"); W.

Clark & W. Marshall, <u>A Treatise on the Law of Crimes</u> § 12.14, at 891 (Marian Q. Barnes ed., 7th ed. 1967) ("The fact that the victim remained calm and had no actual fear *as long as she did what she was told* does not negate a conviction for robbery." (emphasis added)).

Guided by these principles, we believe a rational factfinder could find that Seaton used "intimidation" to obtain the money from Callahan. Seaton walked up to a bank teller and announced: "This is a bank robbery." Had it come from a preschooler holding his parent's hand, such a remark would be a joke at best. Coming from a grown man — with a hood over his head, gloves on his hands, a toboggan cap over his face, and an empty bag on the counter — this remark has an obviously intimidating quality. It became even more so when Seaton then put his hand in his pocket and warned Callahan that she had ten seconds to turn over the money. Any ordinary person would understand what that meant: The self-described bank robber intended to do her harm if he did not get the money by the eleventh second. See 67 Am. Jur. 2d Robbery § 115 (2003) ("Intimidation is frequently found where the robber placed his hand in his pocket, giving the impression that he had a concealed weapon, and made statements implying that the teller would be hurt if he or she did not comply quickly."). It was because of this implied threat, no doubt, that Callahan looks back on this as the "longest" ten seconds of her life.

The intimidation escalated as Seaton got mad and threw the bait money bands back at Callahan. She responded to that assault by putting the "rest of the money in the bag." Thus, even though Callahan waited until receiving Hudson's permission to give Seaton the initial bait money, there was little doubt that thereafter (that is, after Seaton lost his temper and discovered Callahan's attempt at foiling his plan) Callahan handed over the "rest of the money" in direct response to his intimidating behavior.

Seaton argues that the jury's question during deliberations militates against this conclusion. We think the opposite is true. The jurors asked: "Who had to be afraid? Miss Callahan or anyone

in the bank?" After the trial judge advised them that the violence or intimidation element of the finding instruction "refers to Winona Callahan," the jury returned a guilty verdict. Because we presume the jury followed the instructions of the court, Gaines v. Commonwealth, 39 Va. App. 562, 567, 574 S.E.2d 775, 777 (2003), and similarly presume the validity of the verdict, rather than its invalidity, Crowder, 41 Va. App. at 662, 588 S.E.2d at 386, we believe the jury's finding of guilt could mean one of two things.

On the one hand, it could demonstrate that the jurors applied the commonsense distinction (inherent in the common law of robbery) between a victim's purely emotional *fright* and a victim's cool-headed apprehension that the failure to comply with the robber's demands would put her in harm's way. Intimidation can exist in either scenario. The intimidation element of the offense qualifies the "against the will" element. And there was no other plausible influence, other than Seaton's intimidation, pressing against Callahan's predisposed "will" to safeguard her employer's money. She was not making a charitable contribution to Seaton, after all, either on her own accord or at the direction of her supervisor.

On the other hand, the guilty verdict could mean something quite different. The jurors could have viewed Callahan's testimony as internally inconsistent. Though she claimed at trial not to have been "frightened" and to have initially resolved to resist (at least until Hudson intervened), she also said the ten-second threat (punctuated by Seaton putting one hand into his pocket and shaking an empty bag with the other) was the "longest" ten seconds of her life. To the extent the jurors interpreted this idiom to necessarily imply fright, they had the discretion to ignore Callahan's testimony to the contrary. It is altogether possible, therefore, that the jurors dismissed Callahan's claim about not being "frightened" as an after-the-fact exaggeration by a "very outspoken individual" — a boast of sorts, offered from the point of view of courtroom hindsight. See generally Montague v. Commonwealth, 40 Va. App. 430, 436, 579 S.E.2d 667, 669 (2003) (noting

that a factfinder need not decide between rejecting or accepting a witness's testimony in full, but may find it credible in part and incredible in part); see also Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (recognizing that jurors "have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true").

We cannot discern, of course, which scenario best describes what the jurors were thinking. But that does not matter for purposes of resolving this appeal. Those are the only two scenarios consistent with the presumption of correctness. And, in either one, the jurors would have been acting well within their factfinding discretion. For these reasons, we conclude that their verdict was neither plainly wrong nor without evidence to support it.

## B. *Admissibility of Hudson's Testimony*

Seaton next argues that the trial judge erred in admitting Hudson's testimony about her concern for Callahan's safety and her description of Seaton's conduct as "very intimidating." We find no error in this regard.

Given the "broad discretion" of a trial judge over evidentiary matters, we apply a deferential abuse-of-discretion standard of appellate review. Crest v. Commonwealth, 40 Va. App. 165, 170, 578 S.E.2d 88, 90 (2003); Jones v. Commonwealth, 38 Va. App. 231, 236, 563 S.E.2d 364, 366 (2002). The legal threshold for relevance is well settled: "Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001). Every fact, however remote or insignificant, that "tends to establish the probability or improbability of a fact in issue is relevant." Velocity Express Mid-Atlantic v. Hugen, 266 Va. 188, 205, 585 S.E.2d 557, 566-67 (2003) (citations omitted). Put another way, evidence has relevance if it "tends to cast any light" on any material point. Ricks v. Commonwealth, 39 Va. App. 330, 334, 573 S.E.2d 266, 268 (2002) (citation omitted).

In denying Seaton's objection to Hudson's testimony, the trial judge made clear in the jury's presence that the evidence was admissible for the "limited purpose" of assessing the effect of Seaton's conduct on Callahan. Given this limiting instruction, we see no grounds for Seaton's complaint. An eyewitness's characterization of a criminal's conduct necessarily comes through the lens of that witness's subjective reactions. By admitting this contextual evidence the trial judge did not misdirect the jury's focus to Hudson. And, even if the jurors had unwittingly adopted this focus on their own, the trial judge corrected it by instructing them during deliberations that the intimidation element of the offense "refers to Winona Callahan." We thus find no abuse of discretion in the admission of Hudson's testimony.[4]

### C. *Seaton's Proposed "Violence or Intimidation" Instruction*

Seaton contends the trial judge erred by refusing his proffered instruction defining "violence or intimidation" with language taken from Bivins v. Commonwealth, 19 Va. App. 750, 752, 454 S.E.2d 741, 742 (1995). There, we defined violence as the "physical touching or violation of the victim's person" and intimidation as the result of "words or conduct of the accused [that] exercise such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, placing the victim in fear of bodily harm." Id. at 753, 454 S.E.2d at 742.

---

[4] Because of our holding, we do not decide whether Hudson, as the bank branch manager, had constructive possession of the money in Callahan's cash drawer. See, e.g., Clay v. Commonwealth, 30 Va. App. 254, 262, 516 S.E.2d 684, 687 (1999) (en banc) (affirming conviction of two counts of robbery where defendant took one victim's coat and another victim's money was in the pocket of the coat); Waters v. Commonwealth, 29 Va. App. 133, 138-39, 510 S.E.2d 262, 264-65 (1999) (finding evidence sufficient to convict for robbery of employee who was locked in closet even though money was actually taken from another employee, a co-conspirator, who was not in the closet); Sullivan v. Commonwealth, 16 Va. App. 844, 848, 433 S.E.2d 508, 510-11 (1993) (en banc) (affirming conviction for two counts of robbery where, though "both employees possessed their employer's money," only one "physically surrendered money" to the defendant).

We find no error in the trial judge's decision to refuse this proposed instruction. Virginia courts have often cautioned against lifting the "language of a specific opinion" for a jury instruction given that an appellate opinion "is meant to provide a rationale for a decision — and may not translate immutably into jury instructions." Va. Power v. Dungee, 258 Va. 235, 251, 520 S.E.2d 164, 173 (1999). We discourage the "indiscriminate use of language from appellate opinions in a jury instruction," Blondel v. Hays, 241 Va. 467, 474, 403 S.E.2d 340, 344 (1991), because "statements appearing in opinions of this court, while authority for the propositions set forth, are not necessarily proper language for jury instructions," Oak Knolls Realty v. Thomas, 212 Va. 396, 397, 184 S.E.2d 809, 810 (1971).

This case illustrates, as well as any other, the wisdom behind this caution. Bivins addressed the question whether the "violence or intimidation" had to be directed against the victim personally or whether it could simply be incidental to the act of taking possession of the property stolen. Consistent with the common law, we held that the violence or intimidation must be directed against the victim. We did not decide whether the thief's conduct, *had it been* directed against the victim, would have satisfied the "violence or intimidation" element of the offense. Consequently, when we described violence as "physical touching or violation of the victim's person," Bivins, 19 Va. App. at 752, 454 S.E.2d at 742, we meant only to point out that violence must be directed against the victim. We did not mean to imply that the violence test necessarily required some physical contact with the victim, an assertion we later expressly rejected in Chappelle v. Commonwealth, 28 Va. App. 272, 275, 504 S.E.2d 378, 379 (1998).

Similarly, the remark lifted from Bivins about intimidation stated the necessary causal connection between the robber's intimidation and the victim's decision to give up the money. But that causality had already been stated in the finding instruction used in Seaton's case. Seaton's proposed instruction also went on to describe intimidation as words or conduct "placing

the victim in fear of bodily harm."  In the context of the evidence they heard, however, the jurors no doubt understood that this was the particular meaning of the term being applied to this case. The prosecutor presented neither testimony nor argument on any subspecies of intimidation (e.g., extortion, fear of harm to property or to individuals other than the victim, threat of emotional harm, or the like) which would imply anything other than a risk of physical harm to Callahan.[5] The trial judge did not abuse his discretion, therefore, by not clarifying something needing no clarification.

### D.  *Proof of Seaton's Rape Conviction*

Finally, Seaton challenges the admission of the rape conviction and sentencing orders from the Bedford Circuit Court during the sentencing phase of the trial.  Seaton does not contest the fact of his conviction, or the authenticity of the Bedford orders, or that they are exact copies of the orders in the clerk's order book, or that the clerk's verifications are genuine.  Rather, Seaton argues the orders are inadmissible as a matter of law under various statutes (Code § 19.2-295.1, § 17.1-123 and § 19.2-307) because the trial judge's signature nowhere appears on the orders.  We find no merit in any of these arguments.

We begin with Code § 19.2-295.1, which provides that "the Commonwealth shall present the defendant's prior criminal convictions by certified, attested or exemplified copies of the record of conviction."  Under this statute, a "record of conviction" can be something other than a final order signed by the trial judge.  Folson v. Commonwealth, 23 Va. App. 521, 525, 478

---

[5] In this regard, Bivins also defined intimidation to include "[u]lawful coercion; extortion; duress; putting in fear."  Id. at 752, 454 S.E.2d at 742 (quoting Black's Law Dictionary 831 (6th ed. 1990)).  At common law, threats of harm to a dwelling and certain accusations of criminality could satisfy the intimidation element.  See generally 3 Wayne R. LaFave, *supra* § 20.3(d), at 187.  The present case presents no occasion for examining the contours of these particular common law doctrines, and thus, we offer no opinion on the subject.

S.E.2d 316, 318 (1996).[6] Nothing in this statute requires that the "record of conviction," if otherwise reliable, bear the signature of the sentencing judge. The Bedford order book copies satisfy Code § 19.2-295.1 because they constitute a "record of conviction" and are properly "certified, attested or exemplified" by the clerk.

In this respect, Code § 19.2-295.1 parallels Code § 8.01-389(A), which also addresses the admissibility of judicial records. Code § 8.01-389(A) makes clear that the "records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record." The Bedford orders in this case were "authenticated and certified" by the clerk, and thus, do not violate Code § 8.01-389(A).

Seaton next directs us to Code § 17.1-123. This statute, however, does not deal with the general admissibility of judicial records (as does Code § 8.01-389(A)) or with the specific admissibility of such records for purposes of proving a prior conviction during the sentencing phase of a jury trial (as does Code § 19.2-295.1). Instead, Code § 17.1-123(A) provides:

> Orders that make up each day's proceedings that have been recorded in the order book shall be deemed authenticated when (i) the judge's signature is shown in the order, (ii) the judge's signature is shown in the order book, or (iii) an order is recorded in the order book on the last day of each term showing the signature of each judge presiding during the term.

No Virginia court has held that this statute implies an evidentiary exclusion rule for technical violations of the order book procedures. We need not resolve that issue in this case, however,

---

[6] See also Wilson v. Commonwealth, 40 Va. App. 250, 254, 578 S.E.2d 831, 833 (2003) (because a prior conviction can be "proven by any competent evidence," the defendant's guilty plea was sufficient); Harris v. Commonwealth, 26 Va. App. 794, 806, 497 S.E.2d 165, 170 (1998) (using out-of-court statements of the probation and parole officer); Brooks v. Commonwealth, 24 Va. App. 523, 533, 484 S.E.2d 127, 131 (1997) (holding that "the trial judge did not err by admitting copies of the indictments as part of the defendant's 'record of conviction'"); Miller v. Commonwealth, 22 Va. App. 497, 501, 471 S.E.2d 780, 782 (1996) (admitting probation officer's testimony and report during sentencing).

because we find no reason to believe the Bedford Circuit Court failed to comply with the statute.[7]

Absent evidence to the contrary, we presume that public officials "properly discharged their official duties." See Gilmore v. Landsidle, 252 Va. 388, 396, 478 S.E.2d 307, 312 (1996); Crews v. Commonwealth, 18 Va. App. 115, 119, 442 S.E.2d 407, 409 (1994). That presumption holds in this case even though the two orders copied from the Bedford order book do not show the trial judge's signature. Tellingly, these same orders also do not show any signature line where one would ordinarily expect to find the signature of the judge. Instead, at that exact place, the following attestation appears:

> Bedford County Circuit Court, VA
> Carol W. Black, Clerk
> A copy teste:_____
> ☐ Clerk               ☐ Dep. Clerk

The "Dep. Clerk" box is checked on both orders and a deputy clerk's signature appears next to the "copy teste" verification. In addition, the first page of each order identifies the specific "Book" and "Page" number where the order can be found. Each order also includes a stamp noting the date it was recorded in the clerk's order book.

These facts corroborate the presumption of regularity, rather than rebut it. That presumption provides a reasonable basis for inferring that the order book included a judge's signature or a signed term order in compliance with Code § 17.1-123(A)(ii) or (iii). As a result, we find no basis for excluding these orders from evidence under Code § 17.1-123(A).

---

[7] As a general rule, a mere violation of state statutory law does not require that the offending evidence be suppressed, unless the statute expressly provides for an evidentiary exclusion remedy. See, e.g., Janis v. Commonwealth, 22 Va. App. 646, 651, 472 S.E.2d 649, 652, aff'd on reh'g en banc, 23 Va. App. 696, 479 S.E.2d 53 (1996); see also Vinson v. Commonwealth, 258 Va. 459, 469, 522 S.E.2d 170, 177 (1999); Penn v. Commonwealth, 13 Va. App. 399, 406-07, 412 S.E.2d 189, 193 (1991), aff'd per curiam, 244 Va. 218, 420 S.E.2d 713 (1992); Thompson v. Commonwealth, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990).

Lastly, Seaton relies on Code § 19.2-307 which requires certain topics to be addressed in criminal judgment orders (such as the defendant's plea, the court's finding of guilt, any jury waiver, the term of the sentence, and the like). See generally McBride v. Commonwealth, 24 Va. App. 30, 34, 480 S.E.2d 126, 128 (1997) (excluding final order that failed to state that the court found the defendant guilty). The text of this statute does not contain any signature requirement. But it does require that the "final judgment order shall be entered on a form promulgated by the Supreme Court." Id. That form includes a signature line for the judge on the final sentencing order. See Va. Sup. Ct. Rules, Part 3A, Appendix of Forms, Form 10.

We nonetheless disagree with Seaton that Code § 19.2-307 renders the Bedford orders inadmissible as a matter of law. These orders were copied from the clerk's order book, not from Seaton's file folder maintained by the clerk among the circuit court criminal records. As Code § 17.1-123(A)(ii) and (iii) make clear, orders in the order book need not be individually signed so long as the judge otherwise signs the order book or enters a term order. The lack of a judge's signature on the orders copied from the order book, therefore, could not violate Code § 19.2-307 without having the effect of repealing Code § 17.1-123(A)(ii) and (iii) — an interpretation we cannot accept.[8] When "two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed [legislative] intention to the contrary, to regard each as effective." FCC v. NextWave Personal Comm. Inc., 537 U.S. 293, 304 (2003) (citation omitted). And to the extent

---

[8] Seaton's argument also overlooks that Form 10 involves only a final sentencing order. See Jewel v. Commonwealth, 30 Va. App. 416, 424, 517 S.E.2d 264, 268 (1999) (noting that "Code § 19.2-307 addresses sentencing orders and is located in that part of the Code that discusses sentence, judgment, and execution of sentence"). Nothing in Code § 19.2-307 or the mandatory form requires a judge's signature on the prior, purely interlocutory, conviction order. The trial court enters this order after the jury verdict, but before the final sentencing order. The first of the Bedford orders is a mere conviction order and the second a final sentencing order. The proper admission of the first, therefore, would render harmless any putative error in admitting the second. See Byrd v. Commonwealth, 30 Va. App. 371, 377, 517 S.E.2d 243, 246 (1999) (applying harmless error standard to Code §19.2-295.1 error). Both were being offered to prove exactly the same thing: Seaton's prior rape conviction.

such harmony cannot be achieved, the more specific statute takes precedence over the more general one. <u>Frederick County Sch. Bd. v. Hannah</u>, 267 Va. 231, 236, 590 S.E.2d 567, 569 (2004).[9] On the issue of who must sign what, the more specific statute is Code § 17.1-123(A) and the more general Code § 19.2-307.

In the end, Seaton's statutory trek leads us back to first principles. Seaton knows perfectly well whether he was found guilty of rape as the Bedford orders attest. Yet, to date, he has not once challenged either order as inaccurate or unreliable. "The fundamental basis upon which all rules of evidence must rest — if they are to rest upon reason — is their adaptation to the successful development of the truth." <u>Funk v. United States</u>, 290 U.S. 371, 381 (1933). Because the trial judge correctly found no legal basis for excluding these orders and thereby precluding the jury from finding out the truth about Seaton's criminal past, we find no error in their admission into evidence.

### III.

In sum, we hold that sufficient evidence of intimidation exists to support Seaton's robbery conviction. We likewise find no error in the trial court's evidentiary decisions, either during the guilt or penalty phrase of the trial.

<u>Affirmed</u>.

---

[9] "When one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." <u>Frederick County Sch. Bd.</u>, 267 Va. at 236, 590 S.E.2d at 569 (quoting <u>Va. Nat'l Bank v. Harris</u>, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979)); <u>accord</u> <u>County of Fairfax v. Century Concrete Servs.</u>, 254 Va. 423, 427, 492 S.E.2d 648, 650 (1997); <u>Dodson v. Potomac Mack Sales & Serv.</u>, 241 Va. 89, 94-95, 400 S.E.2d 178, 181 (1991); <u>Tharpe v. Commonwealth</u>, 18 Va. App. 37, 43-44, 441 S.E.2d 228, 232 (1994).