COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Haley and Petty
Argued at Salem, Virginia


JAMES LESTER WALLER

OPINION BY
v.      Record No. 1024-07-3          JUDGE D. ARTHUR KELSEY
                                                SEPTEMBER 2, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

Glenn L. Berger (Berger & Thornhill, on brief), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


The trial court convicted James Lester Waller for possessing a firearm after having been convicted of a violent felony. See Code § 18.2-308.2(A). On appeal, Waller claims the trial court erred (i) in not acquitting him based upon his necessity defense, and (ii) in admitting prior conviction orders and finding them sufficient to establish Waller's status as a violent felon. Persuaded by neither assertion, we affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). Viewing the record through this evidentiary prism requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

The evidence before the trial court showed that a deputy sheriff was dispatched to Waller's home in response to an alleged threat. The deputy found Waller placing a long-barreled weapon underneath a van in the front yard. After the deputy restrained Waller, the deputy found a loaded handgun in Waller's back pocket and a shotgun, a rifle, and a pistol under the van. The cylinder and shells for the pistol under the van were found in Waller's pocket.

Waller took the stand at trial and testified he was 69 years old at the time of the offense. He lived alone and owned the property. His 25-year-old nephew lived nearby. The nephew came by that day, and the two argued in the front yard. Waller accused his nephew of stealing from him. The nephew said: "I'm going to get my gun and I'll be back." Waller claimed his nephew intended to kill him. After making these threats, the nephew got in his car and drove off. Waller then "went in the woods" to retrieve various firearms stored on his property. Waller knew where to find them, he admitted, "Cause I know somebody put them there for me."

Waller had previously placed the weapons under "old table tops" to keep them "from getting rained on and messed up." He said "somebody" (whom he never named) "was letting [him] use them." He needed them, Waller argued, to "[p]rotect my life" but admitted that he also used the shotgun for hunting.

After arming himself, he went to the front yard to wait for his nephew's return. Waller did not retreat, call the police, or call anyone else. Waller's nephew never returned. Instead, the next person Waller saw was the deputy sheriff. Waller said about 35 to 45 minutes passed between arming himself and the arrival of the deputy.

The Commonwealth introduced into evidence six conviction orders from 1975 issued by the Circuit Court for Henry County, Virginia. Each conviction involved a charge of armed robbery and bore a stamp indicating the book and page number in which the order appears in the circuit court judgment book. Each order identifies Waller's full name and age as well as his

defense counsel. Waller took the stand in his own defense. He admitted he was a convicted felon but could not remember what he did to earn that status. When asked if he went to prison for "armed robbery," Waller said he did not remember "if it was armed robbery or not."

On the top of the first order ("Book 36 Page 338") appears a typewritten heading identifying the date of trial (January 23, 1975) and the name of the circuit court judge ("Honorable John D. Hooker, Judge"). The judge did not sign the orders, and none of the orders has any signature lines or "Enter" blanks. Each order bears an original ink stamp stating:

> A COPY TESTE:
>   Vickie Helmstutler     CLERK
> BY  T. K. Patterson     D.C.

The name of the clerk appears to be a stamped signature, but the name of the deputy clerk ("D.C.") is an original handwritten signature.

Waller's counsel objected to the admission of the conviction orders because they were not signed by a judge. Counsel acknowledged that the orders bore a "book" and "page number" but noted that no "term order" signed by a judge had been introduced.[1] The Commonwealth argued that the orders had been properly attested and that Waller's concerns went to the weight, not the admissibility, of the evidence. The trial court agreed, holding that the "record book and page number" evidenced that the conviction orders had been "recorded in the Clerk's office." The additional attestation stamp signed by the deputy clerk confirmed that fact.

---

[1] On appeal, Waller includes additional grounds in support of his objection. He argues, for example, that the orders should not have been admitted because the stamp was "not dated," the "person who signed the stamp is not identified," the clerk is not identified as the circuit court clerk, and the stamp did not reveal the particular circuit court. Appellant's Br. at 7-8. Rule 5A:18 precludes us from addressing arguments raised for the first time on appeal "as a basis for reversal" of the lower court's judgment. "As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

After hearing this evidence, the trial court rejected Waller's necessity defense and relied on the armed robbery convictions to trigger the enhanced punishment reserved for those previously convicted of a "violent felony" within the meaning of Code § 18.2-308.2(A) (incorporating by reference Code § 17.1-805(C)).

## II.

### A.  SUFFICIENCY OF THE EVIDENCE — WALLER'S NECESSITY DEFENSE

On appeal, Waller challenges the sufficiency of the evidence.  He concedes he possessed firearms but claims the trial court, sitting as factfinder, should have found him not guilty based upon his necessity defense.  We disagree.

"Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt."  United States v. Powell, 469 U.S. 57, 67 (1984).  As an appellate court, we rely "on the adversarial process to sort out the contested and the uncontested aspects of the case," Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*), and then review the trial court's factfinding "with the highest degree of appellate deference," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).

It follows that a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted).  Instead, we ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original).  These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007),

because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).[2]

The common law defense of necessity applies to violations of Code § 18.2-308.2. The "essential elements" of this defense require a "reasonable belief that the action was necessary to avoid an imminent threatened harm" and a "lack of other adequate means to avoid the threatened harm." Byers v. Commonwealth, 37 Va. App. 174, 183-84, 554 S.E.2d 714, 718 (2001) (quoting Humphrey v. Commonwealth, 37 Va. App. 36, 45, 553 S.E.2d 546, 550 (2001)). In addition, the evidence must prove "a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm." Id.

The trial court, sitting as factfinder, found that the evidence did not establish the elements of the necessity defense. This conclusion could have been reached from any number of perspectives. The court could have concluded Waller exaggerated the story. The nephew never testified. Nor did anyone else. Only Waller testified that his nephew threatened to kill him. The trial court had no obligation to accept this wholly uncorroborated allegation, offered by Waller in support of his only defense to the charge. See Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690-91 (2008); Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003). To be sure, the "power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007).

---

[2] This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a jury may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas, 48 Va. App. at 608, 633 S.E.2d at 231 (citation omitted).

On the other hand, the trial court could have accepted Waller's explanation (either as fact or merely for *arguendo* purposes) but found the alleged threat insufficiently imminent to warrant Waller's decision to outfit himself with multiple firearms and to lay in wait 35 to 45 minutes for the anticipated shootout with his nephew. Waller did not call the police. He did not walk away from the home to avoid his nephew's contemplated return. To the contrary, Waller seemed anxious to prepare himself for a mortal gunfight with his nephew. "Implicit in the application of such a defense" is that the felon "may possess the weapon only so long as is necessary to protect himself from the *imminent* threat." Humphrey, 37 Va. App. at 50, 553 S.E.2d at 553 (emphasis in original). The trial court had ample basis to conclude that, even accepting Waller's testimony at face value, he never truly faced "imminent threatened harm," nor did he lack "other adequate means to avoid the threatened harm." Byers, 37 Va. App. at 184, 554 S.E.2d at 718.[3]

In such cases, we cannot discern with certainty "which scenario best describes" what the factfinder was thinking. Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004). "But that does not matter for purposes of resolving this appeal." Id. In either one, the factfinder "would have been acting well within [its] factfinding discretion." Id. For these reasons, we hold the evidence was sufficient for the trial court to reject Waller's necessity defense.

### B. PRIOR CONVICTION OF A VIOLENT FELONY

Waller also challenges the trial court's decision to admit the armed robbery conviction orders into evidence and its finding that the evidence was sufficient to establish the "violent felony" predicate required by the enhanced punishment provision of Code § 18.2-308.2(A).

---

[3] The Commonwealth also argues that, in any event, Waller constructively possessed the firearms because he placed them in a hiding spot on his own property and essentially conceded he had knowledge, dominion, and control over them immediately *prior* to the nephew's alleged death threat — thus mooting Waller's necessity defense. Given our holding, however, we need not analyze this alternative factual basis for Waller's conviction.

(i) *Admissibility of the Conviction Orders*

The trial court erroneously admitted the conviction orders, Waller contends, because the orders bore no judge's signature and were unaccompanied by any term order signed by a judge. Our view to the contrary has been set out in some detail. In Mwangi v. Commonwealth, 51 Va. App. 498, 503-04, 659 S.E.2d 519, 522 (2008), we applied Code § 8.01-389(A) to an unsigned criminal conviction order. Under that statute, the "records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record." Code § 8.01-389(A). There, as here, the conviction order was "authenticated and certified by the clerk, and the stamp bears the signature of the deputy clerk." Mwangi, 51 Va. App. at 503, 659 S.E.2d at 522; see also Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 606 (1990) ("The conviction order was stamped 'A Copy, Teste: William T. Ryan, Clerk' and undersigned by the deputy clerk. This was sufficient to 'authenticate and certify' the document within the meaning of Code § 8.01-389.").

We similarly held in Seaton, 42 Va. App. at 756, 595 S.E.2d at 17, that an unsigned conviction order may be admitted into evidence if properly authenticated by the clerk. The conviction orders in Seaton, as well as the 33-year-old conviction orders in this case, included no blank signature lines where one would, under modern practice,[4] typically see a judge's signature.

---

[4] "Historically, when clerks of court would hand-copy orders, they could not also copy a judge's signature. Thus, there arose the practice of the clerk attesting copies as genuine. The practice of including or excluding the judge's signature on a photocopy may vary from jurisdiction to jurisdiction." 1986-87 Va. Atty. Gen. Op. 46 (Nov. 21, 1986) (opining that "the signature of the judge is not a requisite for 'a copy teste'"). In 1996, the General Assembly standardized the conviction orders used in Virginia courts. See Code § 19.2-307 ("The final judgment order shall be entered on a form promulgated by the Supreme Court." 1996 Va. Acts, ch. 60). The Virginia Supreme Court later issued a conviction order form which includes a specific signature line for the judge. See Va. Sup. Ct. Rules, Part 3A, Appendix of Forms, Form 10 (adopted November 14, 1996, and effective January 1, 1997). Rule 1:1 provides that the "date of entry" of an order is when it "is signed by the judge." This proposition, however,

Under Code § 17.1-123(A)(ii) or (iii), a specific signature on each order is not required. The book and page numbers stamped on the orders, coupled with the deputy clerk's certification, show that the conviction orders had been entered in the order book. Because of the presumption of official regularity, the trial court had "a reasonable basis for inferring that the order book included a judge's signature or a signed term order in compliance with Code § 17.1-123(A)(ii) or (iii)." Seaton, 42 Va. App. at 757, 595 S.E.2d at 18.[5]

(ii) *Evidentiary Sufficiency of Conviction Orders*

Even if admissible, Waller contends, the conviction orders should not be accepted as sufficient evidence by the trial court as factfinder. We again disagree. The conviction orders provide "not only permissible evidence of the conviction but prima facie evidence of the conviction." Mwangi, 51 Va. App. at 503, 659 S.E.2d at 522. Though he took the stand at trial, Waller made no effort to challenge this *prima facie* evidence. He admitted to being a convicted felon. He never claimed the six conviction orders inaccurately stated his full name and age. Nor did he challenge the accuracy of the orders or contend the signatures of the clerk or deputy clerk were suspect. To be sure, Waller never once denied being convicted of armed robbery.

All legal proscriptions barring a negative inference from a criminal defendant's failure to rebut an incriminating allegation fall away when the defendant takes the stand. See Williams v.

---

presupposes the order is one intended to be signed by a judge — which would include any order not exempted by statute from being individually signed under the historic order book protocols recognized by Code § 17.1-123(A)(ii) or (iii). Cf. Clephas v. Clephas, 1 Va. App. 209, 211, 336 S.E.2d 897, 899 (1985) (observing that, under historic order book practices, a "judgment occurs when a court directs the clerk to enter it on the court's order book").

[5] We acknowledge Moreau v. Fuller, 276 Va. 127, 137-38, 661 S.E.2d 841, 847 (2008), which held: "The purported disposition on the back of the warrant is not an order because it is not signed by the judge. Consequently, the order of the juvenile court that we must consider is the independently generated order that is signed by the judge." That unsigned order, however, did not involve an entry copied from a circuit court term order book that, by statute, need not be specifically signed by the judge. Instead, the unsigned order in Moreau had a blank signature line that conspicuously announced its legal inefficacy. And, to make matters worse, the unsigned order was wholly displaced by a *signed* order addressing exactly the same subject.

Commonwealth, 52 Va. App. 194, 203, 662 S.E.2d 627, 631 (2008). The failure of a testifying defendant to contest a factual assertion, when it is within his power and self-interest to do so, corroborates the probative force of the assertion. See Raffel v. United States, 271 U.S. 494, 497 (1926) (stating a testifying defendant's "failure to deny or explain evidence of incriminating circumstances of which he may have knowledge, may be the basis of adverse inference").

Stated differently, a testifying defendant "may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence, in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it." Caminetti v. United States, 242 U.S. 470, 494 (1917); see Wells v. Commonwealth, 32 Va. App. 775, 787, 531 S.E.2d 16, 21 (2000) (holding that "appellant's failure to deny" the charge while on the stand "was probative of his guilt of the charged offense"); see also Carpenter v. United States, 264 F.2d 565, 569 (4th Cir. 1959).

As we said in Seaton when faced with similar circumstances, "The fundamental basis upon which all rules of evidence must rest — if they are to rest upon reason — is their adaptation to the successful development of the truth." Seaton, 42 Va. App. at 759, 595 S.E.2d at 19 (quoting Funk v. United States, 290 U.S. 371, 381 (1933)). The search for truth in this case would be sidelined if we fail to recognize that, to date, Waller has never challenged any of his conviction orders as "inaccurate or unreliable." Id.; see also Owens, 10 Va. App. at 311, 391 S.E.2d at 606-07 (taking into account that defendant did "not challenge the fact that it is a true and accurate copy of the conviction order"). This conspicuous omission, coupled with the persuasive force of the orders themselves, provided ample evidence for the trial court to conclude that Waller was convicted of armed robbery, a "violent felony" within the definition of Code § 18.2-308.2(A) (incorporating by reference Code § 17.1-805(C)).

III.

In sum, we hold that sufficient evidence supports the trial court's rejection of Waller's necessity defense and that the court did not err in admitting and relying upon Waller's armed robbery convictions. We thus affirm Waller's conviction of possessing a firearm after being previously convicted of a violent felony.

<u>Affirmed.</u>