# CIRCUIT COURT OF FAUQUIER COUNTY

Navistar, Inc.

    v.

New Baltimore Garage, Inc., et al.

January 27, 2010

Case No. CL09-668

BY JUDGE JEFFREY W. PARKER

This matter comes before the Court on a Petition for Appeal filed by Navistar, Inc., pursuant to the Virginia Administrative Process Act, § 2.2-4000, *et seq.*, and Part Two-A of the Rules of the Supreme Court of Virginia. Navistar is appealing the Final Agency Decision of the Commissioner of Motor Vehicles rendered on March 30, 2009, in his Hearing Opinion. The Commissioner based his decision upon the recorded transcript of the hearing and the Recommended Hearing Decision of the Hearing Officer. As a result, the charge back for warranty services by Appellant, Navistar, against Appellee, New Baltimore Garage, was disallowed. For the reasons set forth herein, this decision is reversed and remanded to the Commissioner for further findings consistent with this Opinion.

## Background

This proceeding was initiated by New Baltimore Garage, Inc. (NBG), who filed a Request for Hearing with the Department of Motor Vehicles (DMV) in July 2008. Pursuant to Va. Code § 2.2-4020, a formal

hearing was conducted before a Hearing Officer (designated by the DMV) on October 14, 2008. Upon the Hearing Officer's issuing her Recommended Hearing Decision on January 12, 2009, Navistar timely filed its exceptions with the Commissioner of the Department of Motor Vehicles. On March 30, 2009, the Commissioner issued his decision, generally affirming the conclusions of the Hearing Officer. This appeal by Navistar followed.

Navistar is a manufacturer and distributor of International brand trucks. NBG is a franchise of Navistar, authorized and licensed to do warranty service and repair work on International vehicles. NBG also performs service and repair work for other retail customers on vehicles not under warranty by Navistar.

During the time in question, Navistar and NBG were parties to a Dealer Sales/Maintenance Agreement, which provided, *inter alia*, that, when NBG performed warranty repair work, Navistar would compensate NBG "according to Navistar's warranty adjustment polices in effect at the time." (Recommended Hearing Decision, p. 5.) These policies were set forth in a Policies Manual, which further provided that the servicing facility would charge Navistar "in an amount equal to the servicing location's approved warranty labor reimbursement rate (not to exceed posted door rates . . .) multiplied by the specified amount of time allowable. . . ." *Id.*

On May 12, 2008, a Navistar representative made a "secret shop call" to NBG inquiring about their "customer rate." An unidentified person at NBG reportedly quoted the rate at $90 per hour. The Navistar representative then asked to speak to the Service Manager, who did not deny the $90 per hour quote, but stated they were "looking to raise it." (Tr. 412.)

At that time NBG was charging Navistar $102 per hour for warranty work, a rate previously approved by Navistar.

Following this "blind call" conversation, Navistar undertook a "charge back analysis" taking the position that it had been overcharged for warranty work by $12 per hour, that being the difference between the $102 per hour charged to Navistar and the $90 per hour charged to non-warranty retail customers. In calculating the charge back amount, Navistar determined how many hours of warranty labor NBG had submitted (for payment) from May 19, 2007 to May 20, 2008; it then multiplied those hours, 4,777.8, by $12 per hour for a total of $57,333.60. Navistar claimed this amount to be an overpayment in violation of the contract and charged this back to NBG. Additionally, a chargeback of $62,938.18 was

calculated after an audit was performed at the Garage. However, the parties settled this issue, and this is not before the Court in this appeal.

As a result of the charge back of $57,333.60 and other issues stemming from this chargeback NBG submitted the Request for Hearing to the DMV.

NBG submitted an Amended Request for Hearing seeking a denial of the additional chargeback of $62,938.18 and a decision confirming that the approved rates of $102 and $105 per hour (depending upon when rendered) were "reasonable compensation." NBG also sought attorney's fees pursuant to Va. Code § 46.2-1573.01. As those issues were not addressed in the Opinion of the Hearing Officer or by the Commissioner, nor identified in the appeal, they will not be addressed here.

NBG has alleged that Va. Code § 46.2-1571 protects motor vehicle dealers from manufacturers and producers unilaterally reducing compensation for warranty repair and service work to an amount *below* that charged by dealers for service work to retail customers. NBG further stated that it charged Navistar no more than what it billed retail customers, when the *actual time expended to repair* was factored in.

In support of this position, NBG submitted expert testimony from a Certified Public Accountant who did a comparative analysis of warranty and non-warranty billings. This covered 234 repair jobs over the month of April 2008. As a part of its warranty contract with NBG, Navistar required NBG to use a Navistar Standard Repair Time Schedule in calculating the labor charges submitted for payment on warranty work. According to the CPA, the utilization of this schedule based on *allotted* time caused the billings submitted to Navistar to be for *less* time than the warranty work actually took, "resulting in an hourly billed rate [to Navistar] of less than the average for non-warranty work." Tr. p. 100. Other variables were factored into the calculation by the expert, including partial warranty repairs, discounted rates for certain customers, and errors in the spread sheets.

Evidence was also received that the rate "posted" by NBG was equal to the dealer's approved labor rate charged to Navistar. Based upon this fact, the Hearing Officer concluded there was no difference in the two rates and found the charge back to be invalid.

After the hearing was concluded, the Hearing Officer recommended in her Report that the charge backs be denied. Upon review, the Commissioner agreed and issued his Opinion accordingly.

*Analysis*

In cases involving the Virginia Administrative Process Act, this Court sits purely as an appellate court. *School Board v. Nicely*, 12 Va. App. 1051, 1061, 408 S.E.2d 545 (1991). However, the standard of review is somewhat different from that typically applied by appellate courts to circuit courts. Here the Court must scrutinize the record to determine whether substantial evidence exists to support the agency's decision. *Tidewater v. Buttery*, 8 Va. App. 380, 386, 382 S.E.2d 288 (1989). "Substantial evidence is only such relevant evidence as a reasonable mind might accept to support a *conclusion.*" *Virginia Real Estate Corp. v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123. "Although decisions by Administrative Agencies are given deference when they fall within an area of the Agency's special competence, issues of statutory interpretation fall outside those areas and are not entitled to deference on judicial review." *Virginia Dept. of Health v. NRV Real Estate*, 278 Va. 181, 185, 677 S.E.2d 276 (2009) (citation omitted).

NBG filed for relief pursuant to Va. Code § 46.2-1571. That statute provides in pertinent part that "each motor vehicle manufacturer ... compensate the dealer for warranty parts, service ... as follows:

> (1) *Compensation* of a dealer for warranty parts, service, and diagnostic work shall not be less than the amounts charged by the dealer for the ... parts, service, and diagnostic work to retail customers. . . .

(Emphasis added.)

NBG had the burden of proof to show that Navistar's charge back resulted in less total compensation to NBG then what it was receiving from its non-warranty customers. Va. Code § 2.2-4020(C). NBG presented credible coherent evidence that not only was Navistar *not* charged more for service work, it was actually charged less per hour than NBG's non-warranty retail customers before the charge back was calculated. This was based upon a computational formula which took the actual hourly rate (versus the allowed rate) multiplied by the hours billed. However, the Commissioner chose not to base his decision on consideration of this evidence, but instead relied upon an advertised "posted rate" (as defined in the contract between the parties) as a sufficient legal basis to void the charge back. The difficulty with this conclusion is it ignores the essence of

the proceeding, which is statutory, and focuses instead on the contract, which is only a component of the dispute.

The Appellant, Navistar, contends that the Commissioner failed to comply with the requirements of Va. Code § 46.2-1571. Navistar correctly argues that, in order to invalidate the charge back, the Commissioner must first make a factual determination of the actual compensation to the dealer on both warranty and non-warranty work. Absent such an explicit factual finding, which provides a basis for comparison consistent with the Statute, the decision cannot stand.

Navistar cites *Volkswagen of Am. v. Smit*, 266 Va. 444, 587 S.E.2d 526 (2003), appeal after remand, 52 Va. App. 571, 665 S.E.2d 848 (2008), for this proposition. In *Volkswagen*, the Circuit Court and the Court of Appeals were both reversed for affirming an Agency finding declaring the manufacturer to be in violation of Va. Code § 46.2-1569(7). That particular Code Section required a vehicle manufacturer, upon written request of the vehicle dealer, to ship to the dealer new vehicles "of each make, series, and model needed by the dealer to receive a percentage related to the total of new vehicle production importation currently being achieved nationally by each make, series, and model covered under the franchise."

Clearly, this provision requires some specific mathematical analysis in order to determine whether the dealer has complied with the percentage requirement statutorily identified. In contrast, compliance by the manufacturer, for the benefit of the dealer, with the terms for compensation set forth in § 46.2-1571, does not require so complex an analysis.

Nonetheless, the Commissioner must make on the record a finding consistent with the requirements of the statute. The contract between the parties, and specifically the term providing that the warranty labor rate should not exceed the dealer's "posted" door rate, is relevant to the issue of compensation, but not a sufficient basis alone upon which to determine the actual compensation rate. For purposes of compliance with § 46.2-1571, the ultimate legal issue in this case is the *actual* rate of compensation, which takes into account the calculation of hourly rate times hours *expended* on the job. Neither the Commissioner nor the Hearing Officer ever made an explicit factual finding on this issue. Without that finding, no legitimate comparison between the two rates can be made, nor can a legal conclusion on the ultimate issue in this case be reached.

The Court searched in vain for this finding in the Commissioner's Final Agency Decision. The Court recognizes the difficulty associated with presenting and finding proof on this issue. However, as suggested, the Court does not believe the level of detail necessary to make this finding is as involved as it was in the *Volkswagen* case, due to the difference in the statutory language of the two statutes.

The NBG expert provided detailed testimony on the issue of compensation. It is up to the Hearing Officer to determine if this testimony was sufficient to justify a finding that the compensation to the dealer from Navistar for warranty work (*before* the chargeback) was not greater than the amount received from retail customers for non-warranty work. This finding must be based upon *more* than a "posted rate" displayed in the dealers' office; it must be based upon the billing rate times the labor hours charged for comparable work.

Whether the Hearing Officer needs to receive further testimony or argument will be left to the Commissioner's discretion. This matter will be remanded to the Commissioner for further review consistent with this Opinion.