UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia

STEVEN CORNELIUS ROGERS

MEMORANDUM OPINION[*] BY
v.      Record No. 1056-15-1              JUDGE TERESA M. CHAFIN
                                          OCTOBER 18, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Timothy S. Wright, Judge

Kathleen A. Ortiz, Public Defender (Dalton L. Glass, Assistant
Public Defender, on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

At the conclusion of a jury trial held in the Circuit Court of the City of Chesapeake,

Steven Cornelius Rogers was convicted of possessing a firearm as a convicted felon in violation

of Code § 18.2-308.2.  On appeal, he challenges the relevance of certain portions of the court

orders establishing his prior convictions.  Rogers contends that the circuit court erred by

allowing the Commonwealth to introduce prior conviction orders stating the sentences he

received for each conviction.  Citing Burke v. Commonwealth, 27 Va. App. 489, 500 S.E.2d 225

(1998), Rogers argues that the sentencing information contained in the conviction orders was not

relevant to the charged offense.  While we agree with Rogers's argument concerning the

relevance of the sentencing information, we conclude that the failure of the circuit court to redact

this information from the conviction orders constituted harmless error under the circumstances of

the present case.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004).  So viewed, the evidence is as follows.

During the early morning hours of March 18, 2014, Officer Russell Keene of the Chesapeake Police Department received a call from dispatch reporting gunfire at an apartment complex located within the city.  The dispatch officer informed Keene that a suspect had driven away from the apartments in a dark-colored SUV.  Shortly after receiving the call, Keene saw a vehicle matching the description travelling away from the apartments.  Keene activated the emergency equipment of his patrol car and attempted to stop the vehicle.

Although Keene activated both his emergency lights and siren, the vehicle did not stop immediately.  The SUV drove past a well-lit parking lot and continued down a less-illuminated part of the street.  The lights on Keene's patrol car, including its high-beam headlights, floodlights, and spotlight, allowed him to observe the SUV in the unlit portion of the street.  The SUV reduced its speed as it drove through the darker part of the street, and Keene observed a "dark-colored, oblong-shaped" object come out of its passenger's side window.  The object left the window travelling on an upward arc that carried it two or three feet above the roof of the vehicle and landed in bushes beside the road.  The SUV stopped at a convenience store shortly after Keene saw the object leave the vehicle.

When Keene approached the SUV, Rogers was sitting in its front passenger seat and his girlfriend, Trebecca Battle, was sitting in its driver's seat.  They were the only occupants of the vehicle.  Although Rogers admitted that he and Battle had recently left the apartment complex

where the shooting had occurred, he denied that he had thrown anything from the window of the SUV.[1]

Other officers arrived at the convenience store to assist Keene shortly after he stopped the SUV. With the help of a canine unit trained to locate objects with fresh human odors, an officer found a .45 caliber pistol in the bushes where Keene saw the object come out of the SUV. It had rained earlier that evening, and the pistol was partially covered in wet leaves. It was found eight to ten feet away from the edge of the street. An additional loaded magazine that appeared to be designed for use with a different .45 caliber firearm was found in the center console of the SUV,[2] and a .45 caliber bullet casing was recovered near the scene of the reported gunfire at the apartment complex. Neither DNA nor fingerprints were recovered from the pistol found by the road, the additional magazine, or the casing found near the apartments. Forensic testing also could not determine whether the casing found near the apartments had been fired from the pistol found by the road.

Another officer collected evidence from Rogers and Battle to determine whether gun primer residue was on their hands. At Rogers's trial, an expert testified that "primer residue can be deposited on the hands by . . . firing a weapon, handling a weapon, being in the proximity of the discharge of a weapon, or coming into contact with an object that has primer residue on it." Testing of the evidence collected from Battle revealed a single particle on her left hand that was

---

[1] Rogers explained that he and Battle lived at the apartment building and that they had just returned from an evening at a local nightclub when they decided to visit the convenience store to purchase cigarettes. Rogers claimed that he and Battle pulled into the parking lot of the apartment building in the SUV, immediately turned around, and departed for the convenience store without getting out of the vehicle.

[2] While the police officers participating in this investigation testified that the additional magazine found in the SUV did not appear to be designed for use with the pistol found beside the road, the officers did not attempt to forcefully insert the magazine into that firearm.

"indicative" of primer residue. Testing of the evidence collected from Rogers, however, revealed multiple particles that were "highly specific" for primer residue on both of his hands.[3]

At Rogers's trial for possession of a firearm as a convicted felon, the Commonwealth introduced court orders establishing Rogers's prior felony convictions. One order showed that Rogers had been convicted of two counts of robbery and one count of the use of a firearm in the commission of robbery. Another showed that he had been convicted of felonious assault and the use of a firearm in the commission of that crime. Both orders showed the sentences that Rogers received as a result of his convictions.[4]

Rogers objected to the inclusion of his prior sentences in the orders. While Rogers did not contest the actual convictions themselves, he argued that the sentences were not relevant to the elements of the charged offense and were highly prejudicial.[5] The circuit court initially noted that it was inclined to sustain the objection, took the issue under advisement, and granted a short recess to allow the Commonwealth to prepare redacted copies of the orders at issue. After the recess, however, the circuit court advised the parties that it had decided to overrule the objection. The Commonwealth then introduced unredacted certified copies of the orders showing Rogers's prior convictions and the sentences associated with them.

After the jury retired for deliberation, the foreman submitted a written question to the circuit court asking, "When was the defendant released from prison/still on probation?" With the

---

[3] The trace evidence expert testifying at Rogers's trial explained that "highly specific" particles contained three elements (lead, barium, and antimony) found in gun primer residue, whereas "indicative" particles only contained two of those elements.

[4] Rogers was sentenced to a total of sixty-three years of incarceration for his prior convictions, with fifty-three of those years suspended, resulting in a ten-year period of active incarceration.

[5] The Commonwealth candidly stated that it did not object to redacting the prior sentences from the orders.

agreement of both parties, the circuit court responded: "[Y]ou're not to concern yourself with any matters touching on any possible previous incarceration or possible previous probation. That's simply not an issue that you should concern yourself with."

Following further deliberation, the jury convicted Rogers of the charged offense and recommended a sentence of five years of incarceration. The circuit court imposed the jury's recommended sentence, and this appeal followed.

## II.  ANALYSIS

Code § 18.2-308.2 provides, in pertinent part, that "[i]t shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm . . . ."  Code § 18.2-308.2(A).  Accordingly, a conviction under this statute requires the Commonwealth to prove that the accused possessed a firearm after having been convicted of a felony.  Id.  While Rogers agrees that the Commonwealth was permitted to rely on court orders to establish the existence of his prior felony convictions, he contends that the Commonwealth should not have been permitted to include the sentences he received as a result of his prior convictions in the orders introduced into evidence.  We agree.

When a charged offense requires proof of a prior conviction, "[p]roof of the punishment imposed for [the] prior [conviction] is not relevant to the issue [of] whether the accused is guilty of the offense."  Burke, 27 Va. App. at 493, 500 S.E.2d at 227.  Therefore, sentencing information should be redacted from orders establishing the prior convictions of the accused, and the inclusion of such information in conviction orders introduced during the guilt determination phase of a trial is erroneous.  Id.; see also Martin v. Commonwealth, No. 0843-15-2, 2016

Va. App. LEXIS 84 (Va. Ct. App. Mar. 22, 2016) (applying Burke to violations of Code § 18.2-308.2).[6]

On appeal, the Commonwealth concedes that the circuit court erred by overruling Rogers's objection concerning his prior sentences and agrees that the present case is controlled by Burke.[7] The Commonwealth notes, however, that Burke also held that harmless error analysis is appropriate when a trial court erroneously permits the inclusion of sentencing information in these situations. Burke, 27 Va. App. at 493, 500 S.E.2d at 227. Despite its concession of the circuit court's error in this case, the Commonwealth contends that the inclusion of Rogers's prior sentences in the orders establishing his convictions was harmless under the facts and circumstances of the present case. We agree with the Commonwealth's argument.

As the error alleged in the present case involves the circuit court's decision regarding the relevance of certain evidence, we apply the statutory standard provided by Code § 8.01-678 to determine whether the non-constitutional error was harmless. Code § 8.01-678 states, in pertinent part, that "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." Interpreting this standard, the Supreme Court has reasoned that:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that

---

[6] While we acknowledge that unpublished decisions have no precedential value, we cite Martin here as an informative decision pursuant to Rule 5A:1(f).

[7] Although we are generally precluded from accepting concessions of law made on appeal, see Copeland v. Commonwealth, 52 Va. App. 529, 531-32, 664 S.E.2d 528, 529 (2008), we agree with the Commonwealth's concession based on our independent review of this case.

> substantial rights were not affected. . . . If so, or if one is left in
> grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

After reviewing the record in this case, we conclude that the inclusion of the sentencing information on the orders establishing Rogers's conviction did not influence the jury's decision. The circuit court instructed the jury to disregard the sentencing information contained in the conviction orders, and overwhelming evidence supported the jury's verdict. Furthermore, the prejudicial effect of the sentencing information was limited by the procedural posture of this case.

"In determining whether [an] error could have affected the [jury's] verdict, we must first determine whether the trial court gave a curative instruction. If it gave a curative instruction to the jury, the jury is presumed to have followed 'an explicit cautionary instruction promptly given' unless the record shows otherwise." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007-08, 407 S.E.2d 910, 912 (1991) (quoting LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), cert. denied, 464 U.S. 1063 (1984)); see also Seaton v. Commonwealth, 42 Va. App. 739, 750, 595 S.E.2d 9, 14 (2004) (applying the same principle to a curative instruction given in response to a question from the jury after it had retired for deliberation).

Here, the circuit court essentially instructed the jury to disregard the sentencing information on the conviction orders. In response to the jury's question asking when Rogers was released from prison and whether or not he was on probation, the circuit court instructed members of the jury to "not concern" themselves with any matters regarding Rogers's prior

sentences. Nothing in the record indicates that the jury failed to follow the circuit court's instruction concerning this evidence.

Moreover, the Commonwealth presented ample evidence establishing Rogers's guilt in this case. "An error is harmless . . . if 'other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'" McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000) (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444 (1993)). In the present case, substantial circumstantial evidence linked Rogers to the pistol found beside of the road on the night in question.

On March 18, 2014, Rogers was a passenger in an SUV that matched the description of a vehicle linked to a recent shooting. Keene observed the vehicle driving away from the scene of the shooting shortly after he received a call from dispatch reporting gunfire in the area. When Keene attempted to stop the SUV, its driver did not stop immediately and proceeded to a dark area of the street. As the SUV drove through that area, Keene saw a dark-colored object thrown from the passenger window of the vehicle. Rogers was sitting in the passenger seat of the SUV when it stopped at a convenience store just beyond the unlit portion of the street.

When a police canine unit searched the area where Keene saw the object come out of the window of the SUV, it found a pistol in the bushes by the road. As the canine unit was trained to find items that possessed a fresh human scent, the jury could have reasonably inferred that the gun was recently placed in the bushes. An additional magazine of ammunition was found in the SUV, and a cartridge casing matching the caliber of the pistol found by the road was recovered by the police near the apartment building where the shooting occurred. Also, particles that were "highly specific" to gun primer residue were found on both of Rogers's hands, and the forensics expert who testified at Rogers's trial explained that those particles were commonly found on an

- 8 -

individual when he or she fires or handles a firearm, or is in close proximity to a firearm when it is discharged.

Although Battle testified that Rogers did not throw anything from the window of the SUV on the night in question, "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact."[8] Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). The jury could have rejected Battle's testimony in light of the other evidence presented by the Commonwealth. Given the overwhelming evidence of guilt, we cannot conclude that the sentencing information on the orders establishing Rogers's prior convictions affected the jury's decision.

While we conclude that the admission of the sentencing information constituted harmless error in light of the circuit court's curative instruction and the evidence presented by the Commonwealth, we also note that the prejudicial effect of the sentencing information was lessened by the particular procedural circumstances of this case. As Rogers was charged with possession of a firearm as a convicted felon, the Commonwealth was required to prove his prior convictions. Thus, the jury was aware that Rogers had been convicted of violent crimes involving firearms, and could have reasonably inferred that he had been incarcerated as a result of those convictions. Given these circumstances, we cannot say that the introduction of Rogers's prior sentences had a significant prejudicial effect.

Additionally, we note that the sentencing information did not affect the jury's recommended sentence in this case. The jury would have been informed of the sentences that Rogers had received for his prior convictions during the sentencing portion of his trial. See Code § 19.2-295.1 ("[T]he Commonwealth . . . shall present the defendant's prior criminal history,

---

[8] Although Rogers denied that he threw anything out of the SUV when he was questioned by Keene after he stopped the vehicle, Rogers did not testify at his trial.

including prior convictions and the punishments imposed" at the defendant's sentencing proceeding.). Furthermore, we note that Code § 18.2-308.2 contains a mandatory sentencing provision and that the jury sentenced Rogers to the mandatory minimum sentence required by that statute. See Code § 18.2-308.2(A) ("[A]ny person who violates this section . . . who was previously convicted of a violent felony as defined in [Code] § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years."). As Rogers legally could not have been sentenced to less than the mandatory minimum, we can say beyond all doubt that the circuit court's error did not affect his sentence.

### III. CONCLUSION

In conclusion, we hold that the circuit court erred by admitting the sentencing information contained in the orders introduced by the Commonwealth to establish Rogers's prior convictions. Under Burke, the sentencing information was not relevant to prove the charged offense. We conclude, however, that the introduction of the sentencing information constituted harmless error under the circumstances of this case. The circuit court remedied its error through a curative instruction to the jury, overwhelming evidence established Rogers's guilt, and the procedural posture of the case lessened the prejudicial effect of the sentencing information. Accordingly, we affirm Rogers's conviction.

Affirmed.